Lincoln Combs – State Bar #025080
**O'STEEN MACLEOD COMBS PLC**
300 W. Clarendon Ave., Suite 400
Phoenix, AZ  85013-3424
T: (602) 252-8888 F: (602) 274-1209
lcombs@omclawyers.com
*Attorneys for Plaintiffs*

Ricardo de Anda (*Pro Hac Vice*)
**DE ANDA LAW FIRM**
Plaza de San Agustin, 212 Flores Ave.
Loredo, TX 78040
T: (956) 726-0038 F: (956) 726-0030
deandalaw@gmail.com
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE STATE OF ARIZONA

| | |
|---|---|
| J.E.B., on behalf of himself and his minor child, F.B.; L.M.L., and her minor child, L.J.L.<br><br>Plaintiffs,<br><br>vs.<br><br>United States of America,<br><br>Defendant. | Case No. 2:24-cv-03069-DGC<br><br>**PLAINTIFFS' RESPONSE TO THE UNITED STATES' MOTION TO DISMISS** |

Plaintiffs J.E.B. (hereinafter "Elias"), Elias's son F.B. (hereinafter "John"), L.M.L. (hereinafter "Azul"), and Azul's son L.J.L. (hereinafter "Pedro") hereby respond in opposition to Defendant United States of America's motion to dismiss.

Plaintiffs are Guatemalan nationals who brought suit against the United States under the Federal Tort Claims Acts ("FTCA") for damages Plaintiffs suffered as a result of the government's unconstitutional family separation policy.

The District of Arizona and other district courts around the country have already dealt with most of the issues in the government's motion to dismiss. The government's

illegal and unconstitutional child separation policy spawned dozens of lawsuits in which the government filed Rule 12 motions nearly identical to their motion here. The government's arguments have been rejected many times in many cases, including several in this district. *See, e.g.*, *C.M. v. United States*, No. LV-19-05217, PHX-SRB, 2020 U.S. Dist. LEXIS 252691, at *11 (D. Ariz. March 30, 2020); *A.P.F. v. United States*, 492 F. Supp. 3d 989, 994 (D. Ariz. 2020); *A.I.I.L. v. Sessions*, No. CV-19-00481-TUC-JHC, 2022 U.S. Dist. LEXIS 61582, at *29 (D. Ariz. March 31, 2022); *F.R. v. United States,* No. CV-21-0038-PHX-DLR, 2022 U.S. Dist. LEXIS 130605, at *16 (D. Ariz. July 22, 2022). The Court should follow the logic of those prior rulings and deny the government's motion.

The one novel argument in the government's motion involves the two-year statutory deadline for submitting an administrative claim under the FTCA. Plaintiffs do not dispute that the incidents out of which this lawsuit arises occurred in 2018 and their administrative claim was not filed until November 2021. But equitable tolling applies to the FTCA claim deadline, and the government's actions illegally separating the parents from their children and deporting them back to Guatemala where they lacked any ability to pursue their FTCA claims tolled that deadline. Plaintiffs have pled facts which establish equitable tolling, and under the Rule 12, Fed. R. Civ. P., standard of review, those facts are accepted as true for purposes of evaluating the government's motion. The motion thus fails on this ground as well. The government's motion should be denied in full.

## BACKGROUND

Plaintiffs entered the United States seeking asylum from ethnic, religious, and political persecution. Proposed Second Amended Complaint[1] ("Compl.") ¶¶ 79, 99-102. ICE agents apprehended Plaintiffs shortly thereafter and promptly separated the parents from their children. Compl. ¶¶ 84, 99, 102-03.

The government detained Elias in the United States for two months after the

---

[1] Plaintiffs concurrently filed with this brief their Rule 15 motion for leave to amend their Complaint (Doc. 23), so the proposed Second Amended Complaint can be found in redline form as an exhibit to that motion.

separation causing him severe mental anguish. Compl. ¶¶ 87. The government sent John alone to an ORR facility a thousand miles away for an additional eight months after his father was deported before he was deported as well. Compl. ¶¶ 90-93.

The government detained Plaintiff Azul in the United States for 28 days after it separated her from her son before deporting her without reuniting her with him. Compl. ¶ 108. During that time, it sent Pedro to an ORR facility across the country in New York before he was deported fifty-nine days later. Compl. ¶ 115.

Elias and John are from an isolated village in Guatemala with limited communication to the outside world and have no formal education. Compl. ¶ 79. Elias is functionally illiterate, knows no English, and even Spanish is his second language. *Id.* Azul and Pedro are likewise from a rural village in Guatemala with limited contact with the outside world. Compl. ¶ 99.

After being illegally deported back to Guatemala, Plaintiffs sought to regain entry to the United States through the *Ms. L.* class litigation. Compl. ¶¶ 83, 103, 120. They were granted re-entry via humanitarian parole in September 2021, Compl. ¶ 120, and served their FTCA administrative claim in November 2021, Compl. ¶ 16.

## STANDARD OF REVIEW

The government's motion was brought under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Where, as here, the defendant launches a facial attack on jurisdiction under Rule 12, the Court must accept as true all factual allegations in the Complaint and deem all reasonable inferences in Plaintiffs' favor. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

## ARGUMENT

I. **The statute of limitations has been equitably tolled.**

Equitable tolling is read into every federal statute except where Congress has explicitly excluded the statute from tolling. *Alvarez-Machain v. United States*, 96 F.3d 1246, 1251 (9th Cir. 1996). *Alvarez-Machain* established the applicability of equitable

tolling where the defendant's misconduct prevented the plaintiffs from timely filing their claim, or where "extraordinary circumstances beyond plaintiffs' control" prevented timely filing. *Id.* Furthermore, the statute is tolled in equity "until the barrier caused by these [extraordinary circumstances] is removed." *Forti v. Suarez-Mason*, 672 F. Supp. 1531, 1550 (N.D. Cal. 1987).

As a threshold matter, equitable tolling questions cannot be resolved on a motion to dismiss unless the plaintiff's claims in the complaint, read in the plaintiff's favor, would not allow the plaintiff to prove the statute was tolled. *Lane v. Lake Cnty. Hous. Comm'n*, 724 F. Supp. 3d 1026, 1038 (N.D. Cal. 2024). A plaintiff seeking equitable tolling must show, despite being prevented from filing a claim within the designated time period, that he pursued his rights diligently. However, such diligence requires only such effort that a reasonable person might be expected to undertake. As stated by the Ninth Circuit, "the standard for reasonable diligence does not require an overzealous or extreme pursuit of any and every sense of relief." *Kwai Fun Wong v David Beebe*, 732 F.3d 1030, 1052 (9th Cir. 2013) (en banc). Central to this analysis is whether the plaintiff was without any "fault or want of diligence or care on his part" in pursuing his claim. *Fed. Election Comm'n v Williams*, 104 F.3d 237, 240 (9th Cir. 1996) (noting that equitable tolling doctrine is "read into every federal statute of limitation").

Plaintiffs Azul and Elias were separated from their children and summarily deported without them shortly after their apprehension, in violation of their constitutional rights, and despite their request for asylum.[2] Plaintiffs made contact with legal counsel in the U.S. shortly after their removal seeking legal assistance in procuring reunification with their children and a return to the U.S.[3] They affirmatively sought to join, and did join, the class of plaintiffs in the *Ms. L. v ICE* family separation litigation and prevailed in seeking a return to the U.S.[4] They promptly filed their FTCA claims in November 2021 upon

---

[2] Compl. ¶¶ 83-93, 103-15.
[3] Compl. ¶¶ 83, 103, 120.
[4] *Id.*

– 4 –

learning in September 2021 that they were eligible to return to the U.S. under the terms of the *Ms. L.* litigation.[5]

The case of A*valos-Palma v. United States*, 2014 U.S. Dist. LEXIS 96499, 2014 WL 3524758 (D.N.J. July 16, 2014), is instructive in weighing the applicability of the tolling of the limitations period in FTCA causes of action where the plaintiffs were wrongfully deported. In *Avalos-Palma*, the plaintiff was wrongfully removed to Guatemala pursuant to a removal order that was stayed on appeal before the Board of Immigration Appeals at the time of the removal. *Id.* at **3-4. The plaintiff sued, alleging wrongful deportation and seeking re-entry to the U.S. *Id.* at *5. He did not file his FTCA claim until he succeeded in returning to the U.S., more than two years beyond the FTCA limitations period. *Id.* at **6-7. Citing *Alvarez-Machain,* 96 F.3d at 1251, the court found that equitable tolling applied because the plaintiff had been prevented from filing in a timely manner due to the sufficiently unjust circumstance of being wrongfully deported and barred from entry to the U.S. *Avalos-Palma*, 2014 U.S. Dist. LEXIS 96499 at **16-17. The court held that the plaintiff's wrongful removal to Guatemala physically prevented him from accessing a "functioning court" and prevented him from being placed in a situation where there was no real possibility of gaining relief. *Id.* at *17. Moreover, as here, in *Avalos-Palma* the government was guilty of wrongful conduct that prevented the timely filing of a claim. *Id.* at **16-18 (citing *Seattle Audubon v. Robertson*, 931 F2d. 590, 596 (9th Cir. 1991), and *Forti*, 672 F. Supp. at 1550).

Equitable tolling, then, is appropriate where the plaintiff has been physically and effectively prevented from gaining relief in court by defendant's wrongful action—including a wrongful and illegal deportation. Like the plaintiff in *Avalos-Palma*, Plaintiffs were wrongfully and illegally deported to Guatemala, and this removal prevented them from accessing the U.S. administrative and judicial system in a manner that would result in the effective resolution of their claim. Moreover, as in *Avalos-Palma*, the Plaintiffs

---

[5] Compl. ¶¶ 16, 120

herein did not sit on their rights, but actively and successfully pursued their return to the U.S. through active participation in the *Ms. L. v ICE* class action litigation. *Ms. L. v. United States Immigration and Customs Enf't.*, 310 F. Supp. 3d 1133 (S.D. Cal. 2018).

Defendant argues that filing an FTCA claim is a simple process that could have been accomplished by plaintiffs while in Guatemala. However, regardless of the ease with which a claim may be able to be filed, plaintiffs' inability to press their claims while outside the U.S. rendered the FTCA process meaningless while barred from effective access to the U.S.'s administrative and judicial system. This was precisely the basis for the ruling in *Avalos-Palma*:

> The Government fails to cite any reported cases to demonstrate that an out-of-country claimant—who cannot reenter the United States—can bring FTCA claims without suffering extreme hardship. Significantly, Plaintiff would not have been able to effectively prosecute his claims while in Guatemala. He would be precluded from appearing at any of the proceedings that are required of a civil litigant, including depositions, discovery proceedings, and ultimately, a trial. In that respect, even if Plaintiff filed tort claims against the Government from Guatemala, he had no real possibility of gaining relief in court while he was prevented from re-entering the United States.

*Id.* at *17.

As was the case in *Avalos-Palma*, the FTCA claim statute of limitations should be tolled as a matter of equity for the time period when Plaintiffs were in Guatemala and unable to enter the U.S. due to their wrongful deportation. Indeed, Plaintiffs' Complaint well shows that justice requires the application of equitable tolling. *See Forti*, 672 F. Supp. 1549 (N.D. Cal. 1987) (noting that "[a]lthough statutes of limitations are designed to assure fairness to defendants, flexibility in applying a limitations period to bar actions is necessary to further the interests of justice" (citing and quoting *Burnett v. New York Central R.R. Co*., 380 U.S. 424, 428 (1965) (internal quotation marks omitted)).

II.     **The discretionary function exception does not apply.**

The rest of the government's arguments for dismissal have been raised and rejected

in this District.

The discretionary function exception to the FTCA allows the government to evade liability where the actions complained of involve judgment or choice and are based on considerations of public policy. *C.M.*, 2020 U.S. Dist. LEXIS 252691 at *10. However, the discretionary function exception does not apply where the employee has no choice but to adhere to the directive at issue. *F.R.*, 2022 U.S. Dist. LEXIS 130606 at *14. Such occurs where the actions, and failure to act, amount to a failure to adhere to constitutional mandates. The Constitution, for obvious reasons, can limit the government's discretion under the FTCA, since no law can grant employees and agents of the government the "discretion" to violate the Constitution. *Nurse v. United States*, 226 F.3d 996, 1002 n.2 (9th Cir. 2000) (holding that "the Constitution can limit the discretion of federal officials such that the FTCA's discretionary function exception will not apply"); *see also Fazaga v. Federal Bureau of Investigation*, 916 F.3d 1202, 1250-51 (9th Cir. 2019) (quoting *Nurse*); *Loumiet v. United States*, 828 F.3d 935, 943 (D.C. Cir. 2016) ("We hold that the FTCA's discretionary-function exception does not provide a blanket immunity against tortious conduct that a plaintiff plausibly alleges also flouts a constitutional prescription."); *Fuentes-Ortega v. United States*, 640 F. Supp. 878, 882 (D. Ariz. 2022) ("Other Ninth Circuit cases . . . seem to suggest that a mere constitutional violation is sufficient to defeat the exception.")

Border Patrol agents apprehended Plaintiffs, separated them, and prevented the reunification of John with Elias and Pedro with Azul before each parent was deported. ORR held John and Pedro in detention centers for a prolonged period of time to further the deterrent goals and effects of the government's policy of family separation and the government kept Pedro, John, and their families in the dark as to when or whether they would be released to them. These things were all done to further the terror of the family separation policy, as designed and intended by government agents to deter migrants from seeking asylum along the southern border. The strategy was based on a program of terror

OSteen MacLeod Combs

aimed at the children of Central American families with the temerity to seek asylum in the United States. The message was clear: if you enter the U.S. with a child, the government will take them from you and brutalize them, as the government did with John and Pedro. The policy and its execution were nothing short of a government campaign to commit child abuse to horrify and deter would-be asylum seekers.

These government actions were Constitutional violations of the highest order. *See Nurse*, 226 F.3d at 1002; *Ms. L.*, 310 F. Supp. 3d at 1144-1146 ("This practice of separating class members from their minor children, and failing to reunify class members with those children, without any showing the parent is unfit or presents a danger to the child is sufficient to find Plaintiffs have a likelihood of success on their due process claim."). Separating and subjecting Plaintiffs to a regime of terror, purposefully preventing reunification for three and eight months for Pedro and John respectively, and subjecting Pedro and John to prolonged detention to send a message of child horror to potential migrants in Central America and thereby deter migration, is not conduct susceptible to a reasonable policy analysis. In fact, such conduct has been categorized as "egregious," "outrageous," a "shock [to] the contemporary conscience," and interfering with rights "implied in the concept of ordered liberty," such that the conduct can be defined as "brutal" and so offensive "that it does not comport with traditional ideas of fair play and decency." *Ms. L.*, 310 F. Supp. 3d at 1144-46. The *Ms. L.* court held that family separation was a violation of due process.

Thus, because Plaintiffs have plausibly alleged that their initial detention, their subsequent separation, and Pedro's and John's prolonged detentions violated their constitutional rights, the discretionary function exception does not apply. *See J.P.*, 679 F. Supp. 3d at 926; *F.R.*, 2022 U.S. Dist. LEXIS 130605 at **16-17.

**III.    The due care exception does not apply.**

Defendants assert that the government is free from liability because it acted with due care in executing a statute or regulation when it separated John and Pedro from their

parents and transferring them to ORR custody pursuant to 8 U.S.C. § 1232(b)(3) within 72 hours. However, their argument misses the point. The government's pretext for separating John and Pedro from their parents was Elias's and Azul's supposed criminal charge of entry without inspection and subsequent transfer to an adult jail facility. The pretext was false, as shown by the fact that the government did not charge Elias nor Azul with a crime such that the separations were necessary. Moreover, there was no statute or regulation requiring separation. Rather, John and Pedro were separated from their parents because of a cruel and unconstitutional government policy, a pronouncement from the Attorney General that the executive branch would now terrorize children and their families to deter them from seeking asylum in the U.S. The due care exception does not apply where a mere policy, such as in the instant case, rather than a statute or regulation, mandated the conduct at issue. *J.P.*, 679 F. Supp. 3d at 928-29; *C.M.*, 2020 U.S. Dist. LEXIS 252691 at *9; *F.R.*, 2022 U.S. Dist. LEXIS 130605 at *13; *see also Gonzalez v. United States*, 2013 WL 94236, at *3-4 (C.D. Cal. March 11, 2013) (holding that due care exception only applies where a statute "require(s) a mandatory cause of action"); *Buchanan v. United States*, 915 F.2d 969, 970-71 (5th Cir. 1990) (holding that due care exception applies only to "actions mandated by statute or regulation").

Because the government cannot point to a statute or regulation which mandated the separation of John from Elias and Pedro from Azul or prevented their reunification, the government's due care exception arguments fail.

IV. **Plaintiffs' tort claims satisfy the broad "private person" analogue inquiry.**

The government contends that Plaintiffs cannot establish subject matter jurisdiction under the FTCA because they cannot show, as required by the FTCA, that "a private individual under like circumstances would be liable under state law." *United States v. Muniz*, 374 U.S. 150, 153 (1963). The government previously argued before this Court that "immigration enforcement is solely a federal function," which the Court found unpersuasive because almost any governmental action can so narrowly defined to preclude

any private analog. *Fuentes-Ortega v. United States*, 640 F. Supp. 3d 878, 884 (D. Ariz. 2022). There, as here, the government declined to address the specific tort claims of the Plaintiffs, so the Court "[would] not grant the motion to dismiss on the basis of the government's unduly narrow characterization of the conduct in question." *Id.* Furthermore, the Ninth Circuit requires courts "to find the most reasonable analogy" to private tortious conduct. *Dugard v. United States*, 835 F.3d 915, 919 (9th Cir. 2016); *LaBarge v. Mariposa Cnty.*, 798 F.2d 364, 367 (9th Cir. 1986).

A cause of action for loss of child consortium is well recognized under Arizona law. *Howard Frank, M.D., P.C. v. Superior Court*, 150 Ariz. 228, 230, 722 P.2d 955 (1986) ("It is apparent . . . that the award of consortium damages is a well-established remedy in Arizona for negligent injury to family relations.") This right has been extended to children and parents. *Reben v. Ely*, 146 Ariz. 309, 312, 705 P.2d 1360 (1985); *Villarreal v. State Dept. of Transportation*, 160 Ariz. 474, 477, 774 P.2d 213 (1989). Private individuals have also been held liable for torts involving intentional infliction of emotional distress and negligence in Arizona, as found by this Court in other family separation cases. *J.P. v. United States*, 679 F. Supp. 3d 911, 921 (D. Ariz. 2023); *A.P.F. v. United States*, 492 F. Supp. 3d at 994 (citing *C.M.*, 2020 U.S. Dist. LEXIS 252691 and other District of Arizona cases); *F.R.*, 2022 U.S. Dist. LEXIS 130605 (same).

Plaintiffs' complaint clearly shows that a private individual under like circumstances and analogous to the government in the instant case would be liable under Arizona state law for intentional infliction of emotional distress, negligence, and loss of consortium.

V.  **The Plaintiffs assert tort claims, not constitutional torts.**

In the Complaint, Plaintiffs assert claims for intentional infliction of emotional distress, negligence, and child consortium, all of which have analogues under Arizona law. These claims should not be converted to constitutional torts simply because the Defendant infringed on the Plaintiffs' constitutional rights while violating their duties of

due care under tort law. The Plaintiffs are the masters of their Complaint, and the Defendant cannot "re-categorize" allegations regarding confinement as standalone constitutional tort claims for its benefit. *See C.M.*, 2020 WL 1698191 at *4, n.5; *A.P.F.*, 492 F. Supp. 3d at 996-97.

The Government cites *FDIC v. Meyer*, 510 U.S. 471 (1994), to attempt to mischaracterize Plaintiffs' claims as constitutional torts. But *Meyer* rejected *Bivens* claims under the FTCA because other remedies were available. *Id.* at 477-78. The Supreme Court reasoned that a *Bivens* claim cannot have an analogue in state tort law because it seeks to redress a violation of constitutional rights under the U.S. Constitution. *Id.* at 478. This has no bearing on Plaintiffs' three tort claims because they each have an analogue under Arizona law.

Although Plaintiffs do not raise constitutional claims, Defendant characterizes Plaintiffs' allegations as constitutional attacks on "general conditions, practices, rules, or restrictions of pretrial confinement." Motion at 28 (quoting *Aguilar v. United States*, 2017 WL 6034652, at *4 (S.D. Tex. June 7, 2017)). However, *Aguilar* and other cases cited by Defendant are distinguishable because the scope of those claims were limited to allegations regarding the constitutionality of conditions of confinement. *Id.*; *see also, Sutter v. United States*, 2019 WL 1841905, at *4 (C.D. Cal. March 12, 2019); *Thompson v. United States*, 2015 WL 5567934, at *2 (M.D. Pa. Sept. 21, 2015). Here, Plaintiffs' claims center on the family separation policy and tortious acts of government agents, not on poor conditions of confinement facilities.

While the FTCA bars purely constitutional claims, tort claims that implicate constitutional violations regularly proceed under the FTCA. *See e.g., Nurse*, 226 F.3d at 1002 (FTCA claim can survive dismissal despite discriminatory and potentially unconstitutional policies of the Government); *Raz v. United States*, 343 F.3d 945, 948 (8th Cir. 2003) (plaintiff's claim allowed to proceed, despite defendant's 1st and 14th Amendment violations); *Prisco v. Talty*, 993 F.2d 21, 26 n.14 (3d. Cir. 1993) (similar);

*Limone v. United States*, 579 F.3d 79, 102 n. 13 (1st Cir. 2009) ("[W]e do not view the FBI's constitutional transgressions as corresponding to the plaintiffs' causes of action—after all, the plaintiffs' claims are not *Bivens* claims"); *see also J.P.*, 679 F. Supp. 3d at 927 (holding that tort claims in child separation case were "not constitutional torts").

### VI. **The torts pled by the Plaintiffs do not seek direct liability against the United States and are not systemic tort claims.**

The FTCA authorizes suits against the U.S. for tortious acts committed by agents of the government. *Vander v. United States Dept. of Justice*, 268 F.3d 661, 663 (9th Cir. 2001); *Westbay Steel Inc. v. United States*, 970 F.2d 648, 651 (9th Cir. 1992). The government argues that Plaintiffs' complaint fails because it pleads institutional tort claims rather than torts based on the misconduct of individual employees.

While the FTCA's waiver of sovereign immunity does not encompass claims for the tortious acts of the entire government, or agency, writ large, Plaintiffs complain of tortious conduct by specific agents of the Border Patrol who decided to separate Plaintiffs under the false pretext that it was necessary to do so because Elias and Azul were to be charged with a crime and transferred to adult jail facilities. They complain of agents of ICE who purposefully decided not to reunite John and Pedro with their parents before deportation, and agents of ICE who decided to prolong John and Pedro's detention and not only prevented reunification of each with their parent before deportation, but also their reunification with their Guatemalan families within a reasonable time after the detentions. All these acts were done by individual government agents acting to engineer intense terror on John, Pedro, and their families as a means of deterring irregular immigration along the southern border.

This exact government argument that Plaintiffs' complaint should be dismissed because the torts at issue were the conduct of the government at large, and not of individual agents of the government, was recently rejected by this Court in a parallel family separation case, and for the same reasons expressed in that ruling, the Court should reject

this argument again. *F.R.*, 2022 U.S. Dist. LEXIS 130606 at *17 (citing other District of Arizona rulings denying motions to dismiss in family separation cases).

### VII. Arizona law supports Plaintiffs' claims.

Defendant relies on *Muscat v. Creative Innervisions LLC*, 244 Ariz. 194, 198 (App. 2017) to urge the Court that Plaintiffs' claims are based on lawful incarceration and therefore barred by Arizona law. However, Plaintiffs' claims are completely distinguishable from those in *Muscat*. In *Muscat*, the plaintiff was a convicted sex offender who assaulted a child while in a group home and subsequently sued the group home for failing to adequately supervise the plaintiff and prevent the attack. *Id.* The case dealt with whether "a custodian may be found liable for negligence based solely on consequences that flow from the ward's commission of a crime." *Id.* Plaintiffs here are not criminals, they were not even charged with criminal offenses much less convicted criminally. Nor do they seek to hold Defendant liable for criminal acts committed during their detentions, so *Muscat* does not apply. As with the other government arguments, this one too has been previously rejected in this District on multiple occasions. *J.P.*, 679 F. Supp. 3d at 929; *A.I.L.L.*, 2022 U.S. Dist. LEXIS 61582 at *17 n. 8.

The government also makes an argument under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), that Plaintiffs' Complaint fails to state a negligence claim under Arizona law. But Plaintiffs have correctly alleged that the government owed them a duty of care as detainees under the government's custody. Compl. ¶ 147; *see also J.P.*, 679 F. Supp. 3d at 929-31 (holding in child separation case that plaintiffs had successfully alleged duty because "Arizona law requires a duty of care in situations involving involuntary detainment or commitment" (quotation marks and citation omitted)). The government in its motion ignores the dozens of paragraphs describing behavior by individual government actors that caused them harm, including the specific allegation that forcibly separating Plaintiffs violated those duties. *See, e.g.*, Compl. ¶ 149. Specifically naming the individual government employees

is not required by *Iqbal/Twombly* at the initial pleading stage. *See J.P.*, 679 F. Supp. 3d at 930 ("[A]lthough Plaintiffs do not refer to the CBP officers by name, the United States' pre-discovery complaints about Plaintiffs' inability to name the specific actors is premature. . . . Plaintiffs' allegations regarding the manner in which they were detained and separated by CBP officers are sufficient to state a claim for negligence under Arizona law" (internal citations omitted)). Plaintiffs have more than adequately pled their negligence claims to give the government fair notice of what the claim is and the grounds upon which it rests, which is all that the law requires.

## VIII. Conclusion

The United States' conduct subjected Plaintiffs, including ten-year-old and six-year-old boys, to extreme mental and psychological torture and abuse. Yet the government once again asks this Court to sweep this gross and unconstitutional misconduct under a judicial rug. It asks for the Court to ignore the logical consequences of its illegally deporting asylum seekers to a Third World country by asking the court to find that its inequitable conduct should be rewarded with a ruling denying equitable tolling. The rest of its motion to dismiss merely trots out old arguments that have been repeatedly rejected by this Court and others. The same reasoning applies to those arguments in this case as it does in all the other family separation FTCA lawsuit, and there is no basis for departing from the solid reasoning in the other rulings denying motions just like the one here.

Accordingly, Plaintiffs respectfully request that the government's motion be denied in full.

DATED: May 20, 2025.   **O'STEEN MACLEOD COMBS PLC**

_____
Lincoln Combs

**DE ANDA LAW FIRM**
Ricardo de Anda (*Pro Hac Vice*)

*Attorneys for Plaintiff*

– 14 –

**CERTIFICATE OF SERVICE**

I hereby certify that on May 20 , 2025, I electronically transmitted the foregoing with the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the counsel of record.

By: /s/ Donna Avilez

**COPY** was provided separate via Electronic mail this same date to:

Ricardo de Anda
**De Anda Law Firm**
Plaza de San Agustin
deandalaw@gmail.com
LA: hannah.deandalaw@gmail.com
LA: sprodriguez1128@gmail.com
*Attorneys for Plaintiff*

Theo Nickerson
Assistant United States Attorney
Theo.Nickerson2@usdoj.gov
*Attorneys for United States*

By: /s/ Donna Avilez