TIMOTHY COURCHAINE
United States Attorney
District of Arizona

THEO NICKERSON
Assistant United States Attorney
Connecticut State Bar No. 429356
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, AZ  85004-4449
Telephone: (602) 514-7500
Fax: (602) 514-7693
Theo.Nickerson2@usdoj.gov
*Attorneys for United States of America*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| J.E.B. on behalf of himself and his minor child, F.B.; L.M.L. on behalf of herself and her minor child, L.J.L., <br><br> Plaintiffs, <br><br> v. <br><br> United States of America, <br><br> Defendant. | No. 24-cv-03069-DGC <br><br> **THE UNITED STATES' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** |

## INTRODUCTION

The United States of America respectfully moves to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## BACKGROUND

### A. Statement of the Case

Plaintiffs bring this suit against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671—2680 ("FTCA"), seeking damages based on their immigration detentions and the resulting parent-child separations that occurred between the months of February and May of 2018 as a direct result of Plaintiffs' unlawful entries into the United States near Yuma, Arizona, and their referrals for prosecutions.

Plaintiffs—two family units of one parent and one child—were apprehended after they unlawfully entered the United States in violation of 8 U.S.C. § 1325. The U.S. Border Patrol initiated the process of referring the adult Plaintiffs, J.E.B. and L.M.L., for prosecution for unlawful entry into the United States and designated their children, F.B. and L.J.L, for separate placement by the Department of Health and Human Services' Office of Refugee and Resettlement ("ORR"). The parents and children were separated following the decision to initiate the prosecution referral process and the families remained separated while the adults were detained by U.S. Immigration and Customs Enforcement ("ICE") pending removal proceedings.

The Department of Justice ("DOJ") Zero Tolerance Policy was signed on April 6, 2018 and the Department of Homeland Security ("DHS") referral for prosecution policy was signed May 4, 2018. These policies were created in response to high rates of illegal immigration across the Southwest Border. Under the policy, U.S. Attorney's Offices would accept all of the referrals for prosecution from U.S. Border Patrol ("USBP") Sectors along the Southwest Border. USBP Sectors were directed to refer for prosecution all amenable adults, and those adults were detained through their removal proceedings pursuant to ICE's existing statutory authority. Their children were then designated as unaccompanied alien children ("UAC") and placed in the care and custody of ORR. Plaintiffs allege that the separation that occurred as a result of referring the adults for prosecution for unlawful entry and placing their children in the custody of ORR violated their constitutional rights, constituted negligence and intentional infliction of emotional distress, and resulted in the loss of consortium of the parent-child relationship.

Plaintiffs' claims should be dismissed because they are "forever barred" by the plain language of the FTCA. Under the FTCA, an individual is required to present an administrative claim with the appropriate federal agency within two years after the claim accrues or it is "forever barred." 28 U.S.C. § 2401(b). Plaintiffs' claims accrued in February and May of 2018. Plaintiffs did not present administrative claims until over three years later in November 2021. Their claims are forever barred by the FTCA.

Further, equitable tolling should not apply in this case. Plaintiffs have not demonstrated a single extraordinary circumstance that prevented them from timely filing, nor have they exercised any diligence in pursuing their claims. Instead, they make a factually unsupported allegation that they were prevented from timely presenting an administrative claim merely because they were removed to Guatemala. However, presenting an administrative claim is a simple process of submitting a Standard Form (SF–95) or a written statement describing the claim and providing a sum certain and mailing it to the relevant administrative agency. This can be done from any country. Plaintiffs plead no allegations as to why they were unable to meet this simple requirement merely because they were removed to Guatemala and not physically present in the United States. All that was required for Plaintiffs to timely file an administrative claim was a pen, paper, postage, and access to a mailbox. An administrative claim can also be submitted via email from anywhere in the world. The simple fact that they were in Guatemala, by itself, is insufficient to establish extraordinary circumstances warranting equitable tolling.

Plaintiffs have likewise failed to establish that they pursued their claims with any diligence whatsoever. In fact, it doesn't appear that they took any action to pursue their claims under the FTCA at all until more than three and a half years after their claims accrued, on November 2021, when they presented their administrative claims. Plaintiffs were not reasonably diligent in pursuing their rights, no extraordinary circumstances prevented timely presentment, and a blanket excuse for not complying with the FTCA's statute of limitations merely because they were removed to their home country after unlawfully entering the United States lacks merit. Because Plaintiffs cannot meet the stringent requirements for equitable tolling to apply, their claims remain forever barred and must be dismissed pursuant to the FTCA's statute of limitations.

In addition to Plaintiffs' claims being time-barred, the Second Amended Complaint ("SAC") should be dismissed for several additional reasons. First, Plaintiffs' claims are barred by the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a), which shields the United States from liability for discretionary decision-making relating to the

enforcement of federal criminal and immigration law.  Second, Plaintiffs' claims are barred by the FTCA's exception for actions taken while reasonably executing the law, as the governmental actions that resulted in the separation were authorized by federal law.  Third, there is no private analog for Plaintiffs' claims, as required for a waiver of sovereign immunity under 28 U.S.C. § 1346(b)(1), because Plaintiffs' claims arise out of the enforcement of federal statutes, determinations relating to immigration status, and decisions regarding confinement, which are activities in which only the federal government, and not private parties, can engage.  Fourth, Plaintiffs' claims should be dismissed because the FTCA does not authorize recovery for "constitutional torts" like those asserted here.  Fifth, Plaintiffs' claims are barred because the FTCA does not waive sovereign immunity for institutional tort claims, such as those Plaintiffs' raise here.  Sixth, Plaintiffs' claims are barred because they arise from Plaintiffs lawful detention and are therefore not actionable under Arizona law.  Alternatively, Plaintiffs' negligence claim should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

**B.  Legal Framework for Aliens Entering the United States**

Under the Immigration and Nationality Act ("INA"), any alien present in the United States without being admitted or paroled is inadmissible and subject to removal.  *See* 8 U.S.C. § 1182(a)(6)(A)(i).  Such individuals may also be subject to prosecution for criminal immigration violations, including entering the United States "at any time or place other than as designated by immigration officers" and eluding "examination or inspection by immigration officers."  8 U.S.C § 1325.  Aliens present in the United States without being admitted are considered "applicant[s] for admission" and are "inspected by immigration officers" to assess the validity of their claims.  *See* 8 U.S.C. §§ 1225(a)(1), (a)(3), (b).  Under section 1225(b)(1), aliens who are inadmissible for lack of documentation or for fraud or misrepresentation under 8 U.S.C. § 1182(a)(6)(C) or (a)(7) are subject to removal "without further hearing or review." 8 U.S.C. §  1225(b)(1)(A)(i) (referred to as "expedited removal).  Specifically, such individuals "shall be detained pending a final determination of credible fear prosecution and, if found not to have such

fear, until removed." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) and (b)(2)(A). DHS may in its "discretion" grant parole and release such individuals only under prescribed circumstances on a "case-by-case basis." 8 U.S.C.§ 1182(d)(5); 8 C.F.R. §§ 235.3(b)(2)(iii) and (b)(4)(ii). The federal government further possesses statutory authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." *See* 8 U.S.C. § 1231(g)(1).

### C. <u>Legal Framework for Immigration Custody Relating to Minors</u>

Federal immigration law authorizes the United States to provide for the custody and care of minor children entering the United States. *See* 6 U.S.C. § 279; 8 U.S.C. § 1232. ORR is charged with "the care and placement of unaccompanied alien children who are in federal custody by reason of their immigration status." 6 U.S.C. § 279(a), (b)(1)(A), (b)(1)(C); *see also* 8 U.S.C. § 1232(b)(1). The term "unaccompanied alien child" or "UAC" is defined as a child who: (1) "has no lawful immigration status in the United States"; (2) "has not attained 18 years of age"; and (3) "with respect to whom . . . there is no parent or legal guardian in the United States [or] no parent or legal guardian in the United States is available to provide care and physical custody." 6 U.S.C. § 279(g)(2).

Under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), 8 U.S.C. § 1232(b)(3), "[e]xcept in the case of exceptional circumstances, any department or agency . . . shall transfer the custody of such child to [ORR] not later than 72 hours after determining that such child is an unaccompanied alien child." ORR seeks to place UACs "in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A). However, ORR "*shall not* release such children upon their own recognizance." 6 U.S.C. § 279(2)(B) (emphasis added).

In addition, the federal government entered into a settlement agreement ("the *Flores* Agreement")[1] enforced in the Central District of California that "sets out nationwide policy for the detention, release, and treatment of minors in the custody of the [immigration authorities]." *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016) (citing *Flores* Agreement

---

[1] *See Flores v. Sessions*, No. 85-cv-4544 (C.D. Cal. Feb. 2, 2015) (ECF 101).

¶ 9).  Under the *Flores* Agreement, DHS must expeditiously "transfer the minor to a non-secure, licensed facility[.]"  *Id.* at 902-03 (quoting *Flores* Agreement ¶ 12).

Notably, the *Flores* Agreement "does not address . . . the housing of family units and the scope of parental rights for adults apprehended with their children[,]" and it "does not contemplate releasing a child to a parent who remains in custody, because that would not be a 'release.'"  *Id.* at 906; *see also United States v. Dominguez-Portillo*, 2018 WL 315759, *9 (W.D. Tex. Jan. 5, 2018) ("[*Flores*] does not provide that parents are entitled to care for their children if they were simultaneously arrested by immigration authorities[.]").  Nor does it provide any rights to adult detainees, including any rights of release.  *Flores*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759, at *14-15; *Bunikyte v. Chertoff*, 2007 WL 1074070, *16 (W.D. Tex. Apr. 9, 2007).  While the *Flores* Agreement gives preference to release of minors to a parent, this "does not mean that the government must also make a parent available; it simply means that, if available, a parent is the first choice."  *Flores*, 828 F.3d at 908.

**D.    Prior Executive Branch Immigration Enforcement Directives**

During the time period relevant to this action, the Executive Branch issued several directives regarding enforcement of federal immigration laws.  *See* Executive Order 13767 § 1, 82 Fed. Reg. 8793 (Jan. 30, 2017).  In January 2017, President Trump issued Executive Order No. 13767 ("EO 13767"), stating that "[i]t is the policy of the executive branch to . . . detain individuals apprehended on suspicion of violating Federal or State law, including Federal immigration law, pending further proceedings regarding those violations[.]"  *Id.* at § 2(b).  EO 13767 directed DHS to "ensure the detention of aliens apprehended for violations of immigration law pending the outcome of their removal proceedings or their removal from the country to the extent permitted by law[,]" *id.* at § 6, and to exercise its parole authority "only on a case-by-case basis in accordance with the plain language of the statute . . . and in all circumstances only when an individual demonstrates urgent humanitarian reasons or a significant public benefit derived from such parole," *id.* at § 11(d).  On April 11, 2017, DOJ issued guidance to all federal prosecutors regarding a renewed commitment to criminal immigration enforcement and directed that federal law

enforcement prioritize the prosecution of several immigration offenses, including illegal entry under 8 U.S.C. § 1325.[2]

On April 6, 2018, Attorney General Jefferson Sessions issued a "Memorandum for Federal Prosecutors along the Southwest Border." U.S. DOJ, News Release: Attorney General Announces Zero-Tolerance Policy for Criminal Illegal Entry (April 6, 2018), DOJ 18-417, 2018 WL 1666622 (hereinafter the "Zero Tolerance Memorandum"). The memorandum directed federal prosecutors along the Southwest border "to the extent practicable, and in consultation with DHS-to adopt immediately a zero-tolerance policy for all offenses referred for prosecution under section 1325(a)." *Id.* Consistent with EO 13767, and the Zero Tolerance Memorandum, DHS referred for prosecution adult aliens – including those traveling with children – who unlawfully entered the United States along the Southwest border in violation of § 1325 or other statutory provisions authorizing criminal prosecution. Minor children of those adults were transferred to ORR custody as UACs.

### E.    <u>Allegations in Plaintiffs' Second Amended Complaint</u>

Plaintiff J.E.B. and his son F.B. are Guatemalan nationals who currently reside in the United States. *See* Doc. 27, SAC ¶ 18. On or around February 5, 2018, Plaintiff J.E.B. unlawfully crossed the United States border near San Luis, Arizona, with his then ten-year-old son, F.B., in violation of 8 U.S.C. § 1325. *Id.* ¶ 2-4, 79. Shortly after crossing, Plaintiffs were apprehended by U.S. Customs and Border Protection ("CBP") Border Patrol agents and transported to a nearby CBP Border Patrol facility in Yuma, Arizona. *Id.* ¶ 80.

Plaintiff J.E.B. and his son F.B. were separated at the CBP facility in Yuma, when J.E.B. was transferred to the custody of ICE, as was the practice at the time for aliens found to be in the United States in violation of 8 U.S.C. § 1325. SAC ¶ 87. Accordingly, his son F.B. was transferred to ORR custody and placed at a shelter operated by Southwest Key in Texas. *Id.* at ¶ 90. J.E.B. and F.B. were separated approximately ten months. *Id.* at ¶ 4.

---

[2] *See* U.S. DOJ, Memorandum on Renewed Commitment to Criminal Immigration Enforcement (April 11, 2017), available at https://www.justice.gov/opa/press-release/file/956841/download.

Ultimately, J.E.B. was not prosecuted for violating § 1325 but was removed to Guatemala after being detained by ICE for approximately two months. SAC ¶ 18. His son F.B., after remaining at the Southwest Key facility in Texas for ten months was flown to Guatemala to be reunited with his father, J.E.B. *Id.*

On or around May 10, 2018, Guatemalan nationals, L.M.L. and her then six-year-old son L.J.L., unlawfully entered the United States in violation of 8 U.S.C. § 1325 near Yuma, Arizona, where they were encountered by CBP Border Patrol agents. SAC ¶ 99. L.M.L was transferred to ICE custody for prosecution under § 1325 and her son L.J.L. was sent to ORR custody and placed at a shelter facility in Cayuga, New York. *Id.* ¶ 6 , 99. L.M.L. was ultimately not prosecuted but returned to Guatemala on or around June 9, 2018. *Id.* ¶ 108. L.J.L. was returned to Guatemala on August 5, 2018. *Id.* ¶ 115. Accordingly, Plaintiffs L.M.L. and L.J.L allege they were separated for approximately two months. According to the SAC, Plaintiffs filed their administrative claims with CBP, ICE, and U.S. Department of Health and Human Services in November 2021. SAC ¶ 16. On November 5, 2024 Plaintiffs commenced this lawsuit with the filing of the Complaint asserting causes of action against the United States under the FTCA. Doc. 1. On April 1, 2025, Plaintiffs amended their Complaint. Doc. 16. On May 30, 2025, Plaintiffs filed a Second Amended Complaint. Doc. 27. In the SAC, Plaintiffs assert three causes of action. *Id.* at ¶¶ 133-163. First, Plaintiffs seek to recover money damages for the alleged intentional infliction of emotional distress caused by the United States. *Id.* at ¶¶ 133-146. Second, Plaintiffs seek compensatory damages to redress the alleged negligence of the United States, asserting that by separating the Plaintiffs it "failed to act with ordinary care and breached its duty of care owed to Plaintiffs and their children." *Id.* at ¶¶ 147-157. Third, Plaintiffs seek to recover under the FTCA for loss of consortium caused by the alleged parent-child separation. *Id.* at ¶¶ 158-163. The United States now moves to dismiss Plaintiffs' lawsuit.

# ARGUMENT[3]

## I.    Standard of review.

### A.  Fed. R. Civ. P. 12(b)(1).

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a complaint for lack of subject matter jurisdiction.  When subject matter jurisdiction is challenged in a motion to dismiss, the plaintiff has the burden of proving jurisdiction. *Kingman Reef Atoll Investments, L.L.C. v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008) (citing *Tosco Corp. v. Comtys. for a Better Environment*, 236 F.3d 495, 499 (9th Cir. 2001)). "In considering the jurisdiction questions, it should be remembered that 'it is a fundamental principle that federal courts are courts of limited jurisdiction.'" *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989) (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978)).

A party may make a jurisdictional attack that is either facial or factual.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  A facial attack occurs when the movant "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.*  In resolving a facial attack, the court must accept the allegations of the complaint as true.  *Mason v. Arizona*, 260 F. Supp. 2d 807, 815 (D. Ariz. 2003); *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  "Unlike a Rule 12(b)(6) motion, however, the court will not reasonably infer allegations sufficient to support federal subject matter jurisdiction because a plaintiff must affirmatively allege such jurisdiction." *Mason*, 260 F. Supp. 2d at 815.  By contrast, a factual attack occurs when the movant "disputes the truth of the allegations, that by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039.

---

[3] Pursuant to Local Rule 12.1(c), undersigned counsel certifies that on March 31, 2025, the parties met and conferred on the various grounds of dismissal the United States planned to assert, including for failure to state a claim. As a result of conferral, Plaintiffs filed the First Amended Complaint. Doc. 16.  Plaintiffs filed the Second Amended Complaint on May 30, 2025. Doc. 27. Plaintiffs' counsel and undersigned counsel were unable to cure the remaining jurisdictional defenses presented here via any further amendment.

**B.  Fed. R. Civ. P. 12(b)(6).**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) will only be granted if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (citations omitted).  "[The Court] accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Although factual allegations are taken as true, the Court does not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).  Therefore, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (internal quotation marks and citation omitted); *accord Iqbal*, 556 U.S. at 678-79.  Leave to amend the complaint should be denied if the court determines that "allegations of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

**II.    Plaintiffs' claims are forever barred by the plain language of the FTCA and equitable tolling does not apply.**

Plaintiffs' claims, all brought under the FTCA, are subject to its explicit statute of limitations.  Indeed, the FTCA expressly requires that an administrative claim be presented with the appropriate federal agency within two years of the accrual of the claim in order to bring suit.  "A tort claim against the United States shall be ***forever barred*** unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues...." *See* 28 U.S.C. § 2401(b) (emphasis added).

Here, Plaintiffs' arrests, detention, and referral for prosecution for criminal immigration offenses, resulting in their separation from their children, occurred in February and May of 2018. SAC ¶ 3, 6.  Accordingly, their administrative claims were due to the relevant administrative agencies within two years, or by February and May of 2020.  Nevertheless, Plaintiffs failed to present their claims administratively to the appropriate agencies until November 2021, eighteen and twenty-one months past the statutory deadline.  SAC ¶ 16.

The statute of limitations proscribed in the FTCA is non-jurisdictional and therefore subject to equitable tolling. *United States v. Wong*, 575 U.S. 402, 402 (2015).  However, federal courts apply the doctrine of equitable tolling sparingly.  *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990).  In an FTCA case, when the statute of limitations has expired and the plaintiff seeks equitable tolling, the plaintiff must prove that (1) there were extraordinary circumstances that stood in the way of the ability to present their claim timely and that the plaintiff (2) pursued their rights diligently. *Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250, 255 (2016). "Equitable tolling is a doctrine that 'pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Bent v. Garland*, 115 F.4th 934, 941 (9th Cir. 2024) (internal quotation and citation omitted).

Moreover, a plaintiff bears the burden of establishing both prongs necessary for equitable tolling: (1) extraordinary circumstances that prevented timely filing and (2) diligent pursuit of rights. *Quintero Perez v. United States*, 8 F.4th 1095, 1102 (9th Cir. 2021). A plaintiff must satisfy both prongs, as the Supreme Court has rejected a request for equitable tolling where a litigant failed to satisfy one prong without addressing the other. *Menominee Indian Tribe of Wisconsin*, 577 U.S. at 256 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).  Here, Plaintiffs can satisfy neither prong.

Plaintiffs seek to establish that extraordinary circumstances prevented them from timely filing by alleging that they were physically prevented from complying with the FTCA's statute of limitations, or filing an administrative claim within two years, simply because they were removed to Guatemala.  SAC ¶ 121-22.

Specifically, they allege that: "equitable tolling is appropriate in this case because Plaintiffs' illegal deportation physically prevented them from accessing a functioning court, and there was no possibility of gaining tort relief in court during the period when they would have otherwise been required to bring their case." SAC ¶ 121.  Likewise, Plaintiffs claim that their deportation "physically prevented Plaintiffs from accessing a court to plead their claims, as they were not able to effectively prosecute Plaintiffs' claims while in Guatemala, and they would have been precluded from appearing at any of the proceedings that are required of a civil litigant, including depositions, discovery proceedings, and ultimately, a trial." *Id.* ¶ 122.

However, none of these purported actions actually prevented Plaintiffs from presenting an administrative claim—that is, a written statement giving notice of the claim and a sum certain to the federal agencies within two years.  Indeed, access to a functioning court, the ability to participate in trial or other civil litigation, or the possibility of obtaining tort relief in court are not necessary to present an administrative claim. All that is required to present an administrative claim is a pen, paper, and a mailbox, or email access.  It is not until after an administrative claim is denied by a federal agency, or deemed denied by the claimant, that a claimant might require access to a Court to bring their case in federal court.  28 U.S.C. § 2675(a). Additionally, many of the individuals who were subject to the Zero Tolerance Policy, implemented in 2018, and who were removed from the United States, were able to timely present their administrative claims even where they had been removed to their home country. [4]

---

[4] For example, *A.P.F., et al. v. United States*, Case 2:20-cv-00065-SRB (D. Ariz.) (adult plaintiffs H.P.M., M.C.L., and R.Z.G., and respective minor children A.D., A.J., and B.P., presented timely administrative claims while in Guatemala); *A.I.I.L., et al. v. United States*, Case 4:19-cv-00481-JAS (D. Ariz.) (adult plaintiff J.I.S. and his minor child B.L.S.P. timely presented administrative claims while in Guatemala); *F.R., et al. v. United States*, Case No. 2:21-cv-00339-ESW (D. Ariz.) (adult plaintiff F.R. and minor child A.A. timely presented administrative claims in Honduras); *C.M., et al. v. United States*, Case 5:21-cv-00234 (W.D. Tex.) (adult plaintiff C.M. and his minor child D.V. timely presented administrative claims while in Honduras); *B.A.D.J. v. United States* (2:21-cv-00215 (adult plaintiff B.A.D.J. timely presented administrative claims while in El Salvador).

Further, removal to one's native country after entering the United States unlawfully is an ordinary, rather than an extraordinary circumstance. To hold otherwise would mean that in all immigration enforcement-related tort actions where a claimant is removed, a claimant would simply need not comply with the FTCA's administrative presentment requirement. Or if an unlawfully present alien is in a car accident with a federal employee and is then removed, the claimant would then receive an unending timeframe to bring their claim. Such a result is contrary to the plain language of the statute and would be an absurd result.

Moreover, in other contexts, courts have held that removal, in and of itself, is not a justifiable ground for equitable tolling. *Pequeno-Garcia v. Zarate*, 3:17-CV-867-L-BN, 2017 WL 2470996, at *2 (N.D. Tex. May 4, 2017), *report and recommendation adopted*, 3:17-CV-867-L, 2017 WL 2463324 (N.D. Tex. June 7, 2017) (finding that the plaintiff's civil rights claim should not be equitably tolled merely due to his deportation to Mexico); *Zambuto v. Cnty. of Broward*, 08-61561-CIV, 2010 WL 2162893, at *1 (S.D. Fla. May 26, 2010) ("Plaintiff's removal from this country did not cause any statute of limitations to be tolled. The filing of this lawsuit does not resurrect those claims."); *Ferrer-Ayala v. Prandi*, C-95-4645 EFL, 1996 WL 371303, at *3 (N.D. Cal. June 21, 1996) (holding that statute of limitations for a plaintiff's 42 U.S.C. § 1983 claim had run out and that his deportation itself does not toll the statute of limitations nor stop him from filing his claim from Mexico). Merely alleging that they were removed to Guatemala is insufficient for Plaintiffs to establish extraordinary circumstances for equitable tolling, where their administrative claims could easily have been sent to the appropriate federal agencies from Guatemala. *Quintero Perez*, 8 F.4th at 1102.

In an attempt to show that they diligently pursued their claims, Plaintiffs allege that they participated in the *Ms. L.* class action litigation in order to receive humanitarian parole into the United States. SAC ¶ 123, 125. However, Plaintiffs pursuit of their rights in the *Ms. L.* class action are entirely distinct from pursuing their rights as to their FTCA claims. The SAC contains no allegations whatsoever that Plaintiffs took any action to pursue their claims under the FTCA until they untimely presented their administrative claims in

November 2021.  The suggestion that pursuing their rights under *Ms. L.* to be paroled into the United States was necessary to pursue their FTCA claims is likewise misguided. Rather, as established, presence in the United States was neither necessary nor required to present an administrative claim with the appropriate agencies within two years of accrual of their FTCA claims.  Plaintiffs therefore cannot establish that they diligently pursued their rights as to their FTCA claims at all.  In fact, the SAC makes clear they did not do anything to pursue their rights as to their FTCA claims until November 2021. Further, Plaintiffs managed to apply for class membership into *Ms. L* from Guatemala, which undercuts their claim that they were unable to timely present their administrative tort claim to the agency from Guatemala.  Plaintiffs' bald assertion that they diligently pursued their rights fails to establish this prong.  SAC ¶ 123.

Plaintiffs fail to establish either prong – (1) that extraordinary circumstances prevented their timely presentment of their FTCA administrative claims or (2) that they diligently pursued their rights with respect to their FTCA claims.  Accordingly, the Court should decline to apply the doctrine of equitable tolling and find that their claims are "forever barred" under the plain language of the FTCA.  *See* 28 U.S.C. § 2401(b).

**III.    Plaintiffs' claims are barred by the discretionary function exception to the FTCA's waiver of sovereign immunity.**

**A. The decision to detain J.E.B. and L.M.L in secure adult detention facilities pending immigration proceedings was discretionary.**

Even if the Court applies equitable tolling, the Court lacks subject matter jurisdiction over this action because the United States has not waived its sovereign immunity for Plaintiffs' claims under the FTCA.  The United States enjoys broad immunity from suit and "can be sued only to the extent that it has waived its immunity." *United States v. Orleans*, 425 U.S. 807, 814 (1976).  Absent a specific waiver, sovereign immunity bars a suit against the government for lack of subject matter jurisdiction.  *See FDIC v. Meyer*, 510 U.S. 471, 475-76 (1994).

Although the FTCA waives sovereign immunity for certain common-law tort claims, the statute contains express exceptions that "are designed to protect certain

important governmental functions and prerogatives from disruption." *Molzof v. United States*, 502 U.S. 301, 311 (1992). One such exception – the "discretionary function" exception – bars "[a]ny claim" that is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). As the statute's legislative history explains, the FTCA was "not intended to authorize suit for damages to test the validity of or provide a remedy on account of such discretionary acts even though negligently performed and involving an abuse of discretion." H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10.

The discretionary function exception bars claims arising from governmental conduct that (1) "involve[s] an element of judgment or choice" and (2) is "based on considerations of public policy." *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991) (internal quotations and citations omitted). Under the first prong, courts look to whether "a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow." *Id.* at 322 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). To survive a motion to dismiss, the plaintiff must identify a statute, regulation or policy that is both "specific and mandatory," as well as conduct that violates the statute, regulation, or policy. *See Doe v. Holy See*, 557 F.3d 1066, 1084 (9th Cir. 2009) (internal quotations and citation omitted) (emphasis in original).

Under the second prong, courts evaluate whether the conduct at issue is "susceptible to policy analysis." *Ferguson v. United States*, 792 Fed. Appx. 494, 495 (9th Cir. 2020). "The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation." *Gaubert*, 499 U.S. at 325 (emphasis added). Rather, "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Id.* at 324; *see also Gonzalez v. United States*, 814 F.3d 1022, 1027-28 (9th Cir. 2016).

When the challenged governmental conduct "involve[s] an element of judgment or choice" and is "susceptible to" policy analysis, the discretionary function exception applies

1   and the complaint must be dismissed for lack of subject matter jurisdiction, regardless of

2   whether the government acted negligently or abused its discretion. *See Gaubert*, 499 U.S.

3   at 323; *Barian v. United States*, 728 Fed. Appx. 703, 704 (9th Cir. 2018); *Gordon v. United*

4   *States*, 739 Fed. Appx. 408 (9th Cir. 2018) (affirming dismissal of action pursuant to Rule

5   12(b)(1)); *Gonzalez v. United States*, 814 F.3d 1022 (9th Cir. 2016) (same).

6     Here, Plaintiffs J.E.B. and L.M.L were amenable to prosecution for illegal entry

7   under 8 U.S.C. § 1325(a).  They were separated from their children by Border Patrol, with

8   J.E.B. and L.M.L. subsequently detained in secure adult detention facilities following

9   Border Patrol custody, and F.B. and L.J.L. were rendered unaccompanied due to the

10  initiation of the criminal process for their parents.  Accordingly, they were placed in the

11  care and custody of ORR.[5]  Plaintiffs' claims are barred because the governmental conduct

12  from which their claims arise involves precisely the sort of discretionary decision-making

13  that is shielded by the FTCA.  It is immaterial whether the discretionary decisions were

14  made in furtherance of a policy that remains in place or one that subsequently was

15  rescinded; to find otherwise would render meaningless the FTCA's directive that

16  discretionary function exception applies "whether or not the discretion involved be

17  abused." *See* 28 U.S.C. 2680(a).  Improper, or even unconstitutional decisions remain

18  discretionary and cannot give rise to liability under the FTCA. *See Harlow v. Fitzgerald*,

19  457 U.S. 800, 818 (1982); *Wilson v. Layne*, 526 U.S. 603, 614-15 (1999).

20    "Discretion lies at the heart of the DHS law enforcement function." *Blanco Ayala*

21  *v. United States*, 982 F.3d 209, 215 (4th Cir. 2020); *see also Reno v. Am.-Arab Anti-*

22

23    [5] Once the decision is made to detain an adult in a secure detention facility,
24  separation of that adult from a child with whom he or she crossed the border is required.
    The statutory UAC definition is a broad one that includes circumstances where a parent is
25  physically present but nevertheless unavailable to provide care and physical custody.  6
    U.S.C. § 279(g)(2).  A parent who is detained in criminal custody or secure detention
26  pending removal proceedings is no longer available to provide care and physical custody.
    Moreover, the *Flores* Agreement precludes detention of minors in secure detention
27  facilities, absent circumstances not alleged here.  Rather, under *Flores*, "[DHS] must
    transfer the minor to a non-secure, licensed facility." 828 F.3d at 902-03; *see also Bunikyte*,
28  2007 WL 1074070, at *16 (to comply with the *Flores* Agreement, DHS must "releas[e] the
    children to adult relatives not in custody, adult friends designated by their parents, or even
    state-operated foster care[.]").  Thus, separation occurs regardless of the UAC designation.

*Discrimination Comm.*, 525 U.S. 471, 490 (1999) (noting concerns about "subjecting the prosecutor's motives and decision making to outside inquiry" are magnified in the immigration context). The federal government possesses the express statutory authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." *See* 8 U.S.C. § 1231(g)(1). "Congress has placed the responsibility of determining where aliens are detained within the discretion of the [Secretary]." *Comm. Of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1440 (9th Cir. 1986) (emphasis added)[6]; *Mirmehdi v. United States*, 689 F.3d 975, 984 (9th Cir. 2012) ("[T]he decision to detain an alien pending resolution of immigration proceedings is explicitly committed to the discretion of the [Secretary] and implicates issues of foreign policy.")[7]

This policy-laden discretion necessarily extends to decisions regarding with whom aliens are detained, including decisions regarding whether adults and minors can be detained in the same facility and whether to detain family members together. In *Peña Arita v. United States*, 470 F. Supp. 3d 663 (S.D. Tex. 2020), for example, the court dismissed FTCA claims similarly arising from the prior Trump administration's prosecution policy

---

[6] *See also Gandarillas- Zambrana v. BIA*, 44 F.3d 1251, 1256 (4th Cir. 1995) ("The INS necessarily has the authority to determine the location of detention of an alien in deportation proceedings . . . and therefore, to transfer aliens from one detention center to another."); *Sasso v. Milhollan*, 735 F. Supp. 1045, 1046 (S.D. Fla. 1990) (holding that the Attorney General has discretion over the location of detention); *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (holding that "Attorney General's discretionary power to transfer aliens from one locale to another, as she deems appropriate, arises from" statute).

[7] *See also Cohen v. United States*, 151 F.3d 1338, 1342 (11th Cir. 1998) (decisions regarding where to place prisoners are policy-based decisions protected by the discretionary function exception); *Bailor v. Salvation Army*, 51 F.3d 678, 685 (7th Cir. 1995) (decisions regarding whether to detain or release are policy-based decisions protected by the discretionary function exception); *Lipsey v. United States*, 879 F.3d 249, 255 (7th Cir. 2018) (placement decisions are susceptible to policy analysis); *Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003) ("[A]ssignment to particular institutions or units . . . must be viewed as falling within the discretionary function exception[.]"); *Muick v. Reno*, 83 Fed. Appx. 851, 853 (8th Cir. 2003) (holding claim based on "classification and placement of inmates" barred by discretionary function exception); *Baires v. United States*, 2011 WL 1743224, at *7 (N.D. Cal. May 6, 2011) (decision "to send detainees to one facility or another" is "precisely the kind of conduct protected by the [discretionary function] exception"); *Newbrough v. Piedmont Reg'l Jail Auth.*, 2012 WL 169988, at *4 (E.D. Va. Jan. 19, 2012) (holding "detainee designation and classification decisions . . . fall squarely within the discretionary function exception"); *Douglas v. United States*, 796 F. Supp. 2d 1354, 1369 (M.D. Fla. 2011) ("ICE must weigh various policy considerations in deciding which suspected aliens to detain" and "how to detain them").

that resulted in family separations.  As here, the plaintiffs in *Peña Arita* alleged that the government's practices were unlawful and challenged various associated conditions of confinement.  *Id.* at 686-87.  In dismissing the plaintiffs' claims, the *Peña Arita* court agreed with the government that the policy itself and its implementation by officers in the field are discretionary."  *Id.* at 687 ("[P]rosecutorial judgment is a matter of choice, and obviously grounded in considerations of public policy – such as the United States Attorney General's priorities and United States Attorneys' discretion – that is intended to be shielded by the discretionary function exception.").  Accordingly, the court held that the challenged decision-making was "'grounded in social, economic, and policy'" considerations that the court was "without jurisdiction to second-guess."  *Id.* (quoting *Gaubert*, 499 U.S. at 323).

In this case, Plaintiffs J.E.B and L.M.L. were detained pursuant to the enforcement of federal immigration statutes.  Such decision-making is not merely "susceptible to" policy analysis, but the government spelled out the policies that it sought to advance with its enforcement efforts in a series of specific Executive Branch directives.  As other courts have recognized, policies related to the secure immigration custody of adults as well as the Zero Tolerance Memorandum "amount[] to exercise of the prosecutorial discretion that Congress and the Constitution confer on the Attorney General."  *Mejia-Mejia v. ICE*, 2019 WL 4707150, at *5 (D.D.C. Sept. 26, 2019); *see also Peña Arita,* 470 F. Supp. 3d at 686-87.

As a result of the government's discretionary and policy-based decision to securely detain Plaintiffs J.E.B. and L.M.L., their minor children, F.B. and L.J.L., were placed in the care and custody of ORR, which was vested with authority to make a range of discretionary decisions to ensure the children's health and welfare.  "It is clear that the ultimate choice of facility for housing unaccompanied alien children is a decision vested with policy considerations."  *Walding v. United States*, 955 F. Supp. 2d 759, 771-72 (W.D. Tex. 2013).  The same is true with respect to child welfare considerations made by ORR, such as what is in the "best interests of the child" and the type of setting appropriate for children.  *See* 8 U.S.C. § 1232(c)(2)(A); 6 C.F.R. § 115.14(a).  Accordingly, the separation that forms the basis of Plaintiffs' SAC was the consequence of discretionary decision-

making, and Plaintiffs' claims must therefore be dismissed for lack of subject matter jurisdiction.

In order to overcome the discretionary function exception, Plaintiffs must identify a statute, regulation or policy setting forth a course of conduct that is both "mandatory and specific," as well as conduct that violates said mandatory and specific statute, regulation, or policy. *See Holy See*, 557 F.3d at 1084. In *Gaubert*, the Supreme Court held that conduct is nondiscretionary when a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." 499 U.S. at 322. The Constitution is no different: in some cases, the Constitution may establish such a specific prescription that it removes an official's discretion, but the requirement of specificity applies with the same force whether the prescription is found in the Constitution or a statute or regulation.

The Ninth Circuit has declined to decide "the level of specificity with which a constitutional proscription must be articulated in order to remove the discretion of a federal actor." *Nurse*, 226 F.3d at 1002 n.2; *see also Fazaga v. Fed. Bureau of Investigation*, 916 F.3d 1202, 1251 (9th Cir. 2019) ("[I]f the district court instead determines that Defendants did violate a nondiscretionary federal constitutional . . . directive, the FTCA claims may be able to proceed to that degree."), *reversed on other grounds*, 142 S. Ct. 1051 (2022).

In an attempt to overcome the DFE, Plaintiffs' SAC alleges that the Government's policies violated the Constitution and other legal obligations when it separated the Plaintiffs during their time in federal custody. However, the DFE is not made inapplicable by every allegation of unlawful or unconstitutional conduct, rather only by a showing that the government official's discretion was limited by a specific, clearly established directive (either by the Constitution, statute or regulation), accompanied by plausible assertions that the specific directive was violated.

Here, while Plaintiffs cite to generalized constitutional principles, particularly regarding conditions of confinement, they do not identify a specific constitutional, statutory or regulatory proscribed mandate that sets a definitive course of conduct that applies to the facts of this case sufficient to overcome the DFE. The constitutional allegations regarding conditions of confinement do not establish that at the time of the separation, in accordance

with the discretionary Zero-Tolerance-Policy and the Government's obligations under the TVPRA, that the decision to prosecute J.E.B. or L.M.L. for unlawful entry and the required transfer of F.B. and L.J.L to ORR custody, was prohibited by a specific constitutional right. Simply citing constitutional principles falls short of demonstrating that a specific course of conduct was mandated by the Constitution, statute, or regulation, sufficient to strip the Government of its discretionary authority regarding criminal prosecution directives and enforcement of federal immigration law.  Therefore, the DFE applies.

Plaintiffs SAC fails to establish that a constitutional right or mandate existed that "clearly established" a specific course of conduct in the context of separation of parents and children who were apprehended together after unlawfully crossing the border under the Zero-Tolerance-Policy.  Plaintiffs seemingly rely on the legal conclusion reached by the federal district court that decided *Ms. L. v. United States Immigration and Customs Enf't*, 310 F. Supp. 3d 1133, 1144-46 (S.D. Cal. 2018).  While the *Ms. L* decision carries persuasive value, it did not "clearly establish" a relevant right in this case.  *See Camreta v. Greene*, 563 U.S. 692, 708 n.7 (2011) (decisions of a federal district court judge are not binding precedent in a different judicial district, in the same judicial district, or even on the same judge in a different case).  The decision in *Ms. L* was rendered after the occurrence of the conduct that forms the basis for Plaintiffs' claims, and it therefore fails to establish whether any of the alleged constitutional rights at issue were "clearly established" at the time of Plaintiffs separation.

To be clear, in *Nurse*, the Ninth Circuit reversed the district court's dismissal of the plaintiff's FTCA claims, holding that "[i]n general, governmental conduct cannot be discretionary if it violates a legal mandate," including a specific constitutional mandate. 226 F.3d at 1002.  However, in *Nurse*, the Ninth Circuit declined to decide "the level of specificity with which a constitutional proscription must be articulated in order to remove the discretion of a federal actor." *Id.* at 1002 n.2.  But the DFE was inapplicable in *Nurse*, because the plaintiff's complaint "allege[d] that the policy-making defendants promulgated discriminatory, unconstitutional polices which they had no discretion to create." *Id.* at 1002.  Here, by contrast, Plaintiffs' allegations do not establish that any government

official violated a clearly established constitutional right at the time of the separation.

The Court should require the same level of specificity for constitutional allegations that would be required in determining whether a statute left an employee with "no discretion to abuse." *See, e.g., Bryan v. United States,* 913 F.3d 356 (3d Cir. 2019) (holding FTCA claim failed where "CBP officers did not violate clearly established constitutional rights"); *Ahern v. United States*, No. 2:14-CV-259, 2017 WL 2215633, at *10 (S.D. Tex. May 19, 2017) (holding "rights afforded to Plaintiff under the Fifth Amendment. . . fail to define a set course of conduct . . . would be considered to be non-discretionary"); *Champion v. United States*, No. CV-09-1655, 2010 WL 11463694, at *1 (W.D. La. Oct. 28, 2010) (holding Eighth Amendment not "specific enough . . . to prescribe a non-discretionary course of conduct [and] render the [DFE] inapplicable").

Whatever the precise standard for concluding whether a constitutional provision proscribed a specific course of conduct sufficient to eliminate the inherent discretion in the Government's decision to prosecute J.E.B. and L.M.L. for unlawful entry and transfer their children to ORR custody, it is not satisfied here. Plaintiffs have alleged actions of various kinds by various federal officials. Yet, Plaintiffs have identified nothing in the decisions of the Supreme Court or the Ninth Circuit that removed any federal official's discretion with respect to any of the categories of asserted actions with respect to Plaintiff's separations. *Gaubert*, 499 U.S. at 322. As the Fourth Circuit has observed, "we . . . have been unable to find a substantive due process right to family unity in the context of immigration detention pending removal." *Reyna as next friend of J.F.G. v. Hott*, 921 F.3d 204, 210-11 (4th Cir. 2019); *see also Dominguez-Portillo*, 2018 WL 315759, at *6.

The United States acknowledges that district courts in this circuit have, under similar circumstances, rejected its discretionary function exception argument. S*ee, e.g., A.P.F. v. United States*, 492 F. Supp. 3d 989, 996 (D. Ariz. 2020); *C.M. v. United States*, No. CV-19-5217-PHX-SRB, 2020 WL 1698191, *4 (D. Ariz. Mar. 30, 2020)). The courts in each of these cases found that the mere pleading of a plausible constitutional violation rendered the discretionary function exception inapplicable. *See id*.; *see also F.R. v. United States*, No. CV-21-00339-PHX-DLR, 2022 WL 2905040, at *3 (D. Ariz. July 22, 2022)

1    (rejecting the same arguments); *B.A.D.J. v. United States*, No. CV-21-00215-PHX-SMB,

2    2022 WL 11631016, at *3 (D. Ariz. Sept. 30, 2022).  However, these cases are not binding

3    precedent and the United States urges this Court to hold that mere constitutional allegations

4    are insufficient to overcome the DFE, unless they proscribe a clearly established course of

5    conduct that was violated.  *Gaubert*, 499 U.S. at 322-23.

6    As the Court in *B.A.D.J.* held, "[t]he FTCA and its exceptions represent Congress's

7    express waiver of sovereign immunity.  Allegations of constitutional violations should not

8    erase the statutory exceptions authored by and for the sovereign itself." *B.A.D.J.*, 2022 WL

9    11631016, at *3 (citing *Linder v. United States*, 937 F.3d 1087, 1091 (7th Cir. 2019)

10   ("[U]nless § 2680(a) is to be drained of its meaning, it must apply to discretionary acts that

11   are tortious."). The *B.A.D.J.* court also held that "constitutional violations are best reserved

12   and analyzed under Bivens and its progeny.  *See Bivens v. Six Unknown Named Agents of*

13   *Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  It held that "[t]he inquiry is not about how

14   poorly, abusively, or unconstitutionally the employee exercised his or her discretion but

15   whether the underlying function or duty itself was a discretionary one."" *Id.* (citing *Shivers*,

16   1 F.4th at 931. (11th Cir. 2021)).

17   Here, "[b]ecause the decision to detain an alien pending resolution of immigration

18   proceedings is explicitly committed to the discretion of the [Secretary] and implicates

19   [considerations of public] policy," it falls squarely within the discretionary function

20   exception.  *Mirmehdi*, 689 F.3d at 984.  Because the separation that forms the basis of

21   Plaintiffs' claims was the consequence of discretionary decision-making, and because no

22   statute, regulation or constitutional provision stripped the Executive of this discretion by

23   proscribing a specific course of conduct, Plaintiffs' claims must be dismissed for lack of

24   subject matter jurisdiction under the discretionary function exception to the United States'

25   waiver of sovereign immunity in the FTCA.

26   **B. Plaintiffs' claims regarding the conditions of their confinement are**
     **barred by the discretionary function exception.**

27   Plaintiffs' SAC alleges that their detentions violated federal law and policy related to

28   detention conditions.  SAC at ¶¶ 60-65.  However, courts have repeatedly held that claims

based on acts or omissions relating to conditions of confinement are barred by the discretionary function exception because they involve discretionary decisions susceptible to policy considerations. *See, e.g., Bultema v. United States*, 359 F.3d 379, 384 (6th Cir. 2004) (decision not to provide bed rails susceptible to policy considerations); *Campos v. United States*, 888 F.3d 724, 733 (5th Cir. 2018) (deficiencies in computer database that failed to reveal immigration status protected by discretionary function exception); *Cosby v. Marshals Service*, 520 Fed. Appx. 819, 821 (11th Cir. 2013) (detainee medical care decisions involve "several policy considerations . . . including prison security, the allocation of finite resources, and the logistics of prisoner transportation if transfer to an off-site facility is an option"); *Patel v. United States*, 398 Fed. Appx. 22, 29 (5th Cir. 2010) (discretionary function exception shielded decision to transfer prisoner to facility with allegedly inadequate medical treatment); *Ross v. United States*, 2013 WL 5290498, at *4 (N.D. Tex. Sept. 18, 2013) ("FTCA complaints of overcrowding, understaffing, and similar issues pertaining to a prisoner's living quarters are routinely found to be excluded from the FTCA by the discretionary function exception"); *Antonelli v. Crow*, 2012 WL 4215024, at *3 (E.D. Ky. Sept. 19, 2012) (collecting cases in which myriad conditions of confinement claims, including claims based on temperature and crowding, barred by discretionary function exception); *Lineberry v. United States*, 2009 WL 763052, at *63 (N.D. Tex. Mar. 23, 2009) ("Plaintiff's allegation of negligent overcrowding falls within the discretionary function exception"); *Harrison v. Fed. Bureau of Prisons*, 464 F. Supp. 2d 552, 559 (E.D. Va. 2006) ("[T]he BOP's provision of telephone services is a matter committed to its discretion that will not be second-guessed through an FTCA claim.").

## IV.     Plaintiffs' claims are barred by the FTCA's exception for actions taken while reasonably executing the law.

Plaintiffs' claims related to the decision to transfer F.B. and L.J.L. to the custody of ORR are independently precluded because the FTCA prevents the United States from being held liable for "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid."  28 U.S.C. § 2680(a).  Thus, "[w]here government

employees act pursuant to and in furtherance of regulations, resulting harm is not compensable under the act[.]" *Dupree v. United States*, 247 F.2d 819, 824 (3d Cir. 1957); *see also Accardi v. United States*, 435 F.2d 1239, 1241 (3d Cir. 1970) (holding claim arising out of "the enforcement of 'rules and regulations'" barred by the exception).

Among other things, this exception "bars tests by tort action of the legality of statutes and regulations." *Dalehite v. United States*, 346 U.S. 15, 33 (1953); *see also* H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10 (noting that it was not "desirable or intended that the constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a damage suit for tort"); *Powell v. United States*, 233 F.2d 851, 855 (10th Cir. 1956) (FTCA does not waive sovereign immunity for claims based on employees' acts "performed under and in furtherance of the regulation . . . even though the regulation may be irregular or ineffective"). Accordingly, where a government employee's actions are authorized by statute or regulation, the exception for actions taken while reasonably executing the law applies, and the claim must be dismissed for lack of subject matter jurisdiction. S*ee Borquez v. United States*, 773 F.2d 1050, 1053 (9th Cir. 1985); *FDIC v. Citizens Bank & Trust Co. of Park Ridge, Ill.,* 592 F.2d 364, 366 (7th Cir. 1979); *Sickman v. United States*, 184 F.2d 616, 619 (7th Cir. 1950).

Here, the United States is required to "transfer the custody" of children to the care of ORR "not later than 72 hours after" determining that there is no parent available to provide care and physical custody, absent exceptional circumstances. 8 U.S.C. § 1232(b)(3). In this case, the government made the determination that J.E.B. and L.M.L. were unable to provide care and physical custody for F.B. and L.J.L. The government made the discretionary decisions to refer J.E.B. and L.M.L for criminal prosecution and to detain them in secure immigration detention facilities. Once those protected discretionary determinations had been made, the TVPRA required that F.B. and L.J.L. be transferred to ORR custody. The enforcement of that statutory command cannot form the basis of an FTCA claim.[8]

---

[8] Courts in this district have held that there is no statute or regulation "requiring the

### V.    Plaintiffs' claims are not actionable under the FTCA because there is no private person analog.

Plaintiffs' claims further fail because the governmental conduct challenged has no private person analog.  The FTCA requires a plaintiff to allege "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  The statute authorizes tort recovery against the United States only "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.  Here, Plaintiffs do not even allege that a private person analog exists that would permit their suit under the FTCA.  *See generally* SAC.

Indeed, the FTCA "requires a court to look to the state-law liability of private entities, not to that of public entities, when assessing liability under the FTCA." *United States v. Olson*, 546 U.S. 43, 45- 46 (2005) (internal quotations omitted).  While the private analog need not be exact, a plaintiff must offer "a persuasive analogy" showing that the government actor sued would be subject to liability under state law if it were a private person. *Westbay Steel, Inc. v. United States*, 970 F.2d 648, 650 (9th Cir. 1992).  Thus, as a general matter, the FTCA does not waive sovereign immunity for claims against the United States based on governmental "action of the type that private persons could not engage in and hence could not be liable for under local law." *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988) (internal quotations omitted).

Plaintiffs' alleged harms stem from the Government's decisions to enforce federal criminal and immigration laws and hold J.E.B. and L.M.L. in secure adult detention facilities pending removal, which rendered their children "unaccompanied" and resulted in their placement in the care and custody of ORR.  The United States has not waived its sovereign immunity for such decisions because only the federal government has the

---

separation of Plaintiffs upon their entry into the country." *A.P.F.,* 492 F. Supp. 3d at 996; *see also C.M. v. United States*, No. CV-19-05217-PHX-SRB, 2020 WL 1698191, at *4 (D. Ariz. Mar. 30, 2020). However, as explained, federal law requires that children be placed into ORR custody if their parents are unable to provide care. The decision to detain those parents for prosecution, and to detain them pending removal, is a discretionary one.

authority to enforce federal law and make determinations concerning the detention of aliens. Accordingly, such decisions have no private person analog. *See, e.g., Air Shuttle Corp. v. United States*, 112 F.3d 532, 537 (1st Cir. 1997) (holding decision to take enforcement action under federal law was not conduct for which private individual could be held liable and thus did not give rise to FTCA action).

The district court in *C.M. v. United States*, 2020 WL 1698191, at *2 (D. Ariz. Mar. 30, 2020), found a private analog by comparing a federal detention facility to a private nursing home. However, in doing so, the *C.M.* court relied on *Estate of Smith v. Shartle*, No. CV-18-00323-TUCS-RCC, 2020 WL 1158552 at *2 (D. Ariz. Mar 10, 2020), a case in which a sex offender inmate was housed with, and then murdered by, a gang member who previously had threatened to kill him. The *Shartle* court found an analogy to a nursing home's duty of care found in Arizona Revised Statutes § 46-455, which imposes civil liability on private nursing home employees who cause or permit the life of a vulnerable adult to be endangered by neglect. The United States respectfully submits that the *C.M.* court's ostensible private person analogy—comparing the federal government's authority to enforce federal immigration law and to make discretionary determinations concerning the detention of aliens to the operation of a private nursing home—is inapposite.[9]

Indeed, courts have repeatedly held that governmental decisions concerning immigration have no private person counterpart and thus cannot serve as the basis for a claim under the FTCA. *See, e.g., Bhuiyan v. United States*, 772 Fed. Appx. 564, 565 (9th Cir. 2019) ("[T]here is, as a general matter, no private analogue to governmental withdrawal of immigration benefits."); *Elgamal v. Bernacke*, 714 Fed. Appx. 741, 742 (9th Cir. 2018) ("[B]ecause no private person could be sued for anything sufficiently analogous to the negligent denial of an immigration status adjustment application, that claim must be dismissed as well."); *Elgamal v. United States*, 2015 WL 13648070, at *5 (D. Ariz. July 8, 2015) (recognizing "immigration matters" are "an inherently governmental function");

---

[9] For the same reasons, the United States respectfully submits that the private person counterpart found in *A.P.F. v. United States*, 492 F. Supp. 3d 989 (D. Ariz. 2020), also does not provide the "persuasive analogy" required by 28 U.S.C. §§ 1346(b)(1) and 2674.

*Mazur v. United States*, 957 F. Supp. 1041, 1042-43 (N.D. Ill. 1997) (holding, in matters relating to naturalization of aliens, "only the United States has the power to act" and thus "there is no private analog under state law"); *Omoniyi v. Dep't of Homeland Sec.*, 2012 WL 892197, at *9 (S.D.N.Y. Mar. 13, 2012) ("[T]he alleged misconduct of CIS in initially denying Plaintiffs [sic] naturalization application has no private analog . . . .").

The Second Circuit's decision in *Akutowicz v. United States*, 859 F.2d 1122 (2d Cir. 1988) is instructive. In that case, the Second Circuit rejected the plaintiff's FTCA suit challenging the Department of State's wrongful revocation of his U.S. citizenship, holding that the plaintiff failed to "satisf[y] the private analogue requirements." *Id.* at 1126. In so holding, the court observed: "[Q]uasi-legislative or quasi-adjudicative action by an agency of the federal government is action of the type that private persons could not engage in and hence could not be liable for under local law." *Id.* at 1125 (internal quotations and citation omitted). Thus, the court determined, "the withdrawal of a person's citizenship constitutes a quasi-adjudicative action for which no private analog exists," since "[w]ithout doubt, no private citizen is empowered to certify the loss of American nationality." *Id.* at 1125-26.

The same is true here – the federal government's detention decisions are, without doubt, ones that no private actor is empowered to make: "Private persons cannot establish facilities to detain other persons – only the government can, either on its own or through a government contractor." *McGowan v. United States*, 825 F.3d 118, 127 (2d Cir. 2016); *see also, e.g., Buzzanca v. D.C.*, 2021 WL 796275, at *4 (D.D.C. Mar. 2, 2021) (dismissing FTCA claims, holding "[p]laintiff's claim rests on his wrongful detention, and only the government has the authority to detain"); *Portillo v. United States*, 2018 WL 523363, at *3 (D. Nev. Jan. 22, 2018) (dismissing FTCA claims, holding authority to "detain other persons" is "a uniquely governmental function that has no private analogue"), *aff'd*, 741 Fed. Appx. 415 (9th Cir. 2018). Accordingly, Plaintiffs' claims should be dismissed.

**VI.    Plaintiffs' claims are barred because the FTCA does not authorize recovery for constitutional torts as asserted here.**

Plaintiffs' claims are also barred because the FTCA does not authorize constitutional tort claims like those Plaintiffs pursue here. SAC ¶¶ 126-132. While the FTCA provides a

limited waiver of sovereign immunity for certain common-law tort claims, the Supreme Court has held that the FTCA does not provide a cause of action for torts involving alleged constitutional violations. *Meyer*, 510 U.S. at 477-78. As the Supreme Court explained in *Meyer*, a claim is actionable under the FTCA only if the United States would be liable as a "'private person' 'in accordance with the law of the place where the act or omission occurred.'" *Id.* (quoting 28 U.S.C. § 1346(b)). "A constitutional tort claim . . . could not contain such an allegation." *Id.* at 477. Accordingly, "the United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims." *Id.* at 478; *Roundtree v. United States*, 40 F.3d 1036, 1038 (9th Cir. 1994) ("United States cannot be sued on the theory that there has been a violation of [plaintiffs'] constitutional rights.").

In the instant case, Plaintiffs' claims appear to be based, at least in part, on the conditions of confinement. SAC ¶¶ 56-65. Although Plaintiffs label their claims as claims for IIED, negligence, and loss of child consortium, courts have recognized that claims based on conditions of confinement are more properly characterized as a "'[c]onstitutional attack[ ] on general conditions, practices, rules, or restrictions of pretrial confinement. . . [and] the United States is not vicariously liable for constitutional torts of its officials since the United States has not waived sovereign immunity from such actions.'" *Aguilar v. United States*, 2017 WL 6034652, at *4 (S.D. Tex. June 7, 2017) (dismissing allegations regarding food, crowding, and sanitation at CBP detention facility); *see also, e.g., Sutter v. United States*, 2019 WL 1841905, at *4 (C.D. Cal. March 12, 2019) ("[E]ven though Plaintiff attempts to cloak his claims in terms of negligence, his [conditions of confinement] claims are constitutional tort claims and as such are not cognizable under the FTCA.") (citations omitted); *Thompson v. United States*, 2015 WL 5567934, at *2 (M.D. Pa. Sept. 21, 2015) (condition of confinement claim is constitutional claim that cannot be brought under FTCA).

Moreover, it has been recognized by at least one court in this context that an alleged constitutional violation did not defeat application of the FTCA's discretionary function exception. *See Peña Arita*, 470 F. Supp. 3d at 688 (dismissing FTCA claims based on family separation, holding, in part, "to the extent Plaintiffs . . . assert that the Constitution

itself furnishes a nondiscretionary standard . . . such claim is jurisdictionally barred").

**VII.    Plaintiffs' claims are barred to the extent they assert institutional torts against the United States.**

The FTCA's limited waiver of sovereign immunity allows a plaintiff to sue the United States for damages arising from certain common-law torts committed by federal employees acting within the scope of their employment. *Valdez v. United States*, 56 F.3d 1177, 1179 (9th Cir. 1995) (citing 28 U.S.C. § 1346(b)). The plain language of 28 U.S.C. § 1346(b) requires a plaintiff to establish that the conduct of individual government employee(s) caused harm:

> [D]istrict courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of ***any employee*** of the Government while acting within the scope of his office or employment . . . (emphasis added).

Furthermore, in *Adams v. United States*, 420 F.3d 1049 (9th Cir. 2005), the Ninth Circuit held that the terms "person" and "employee of the government," as used in the FTCA, mean individuals and natural persons, not institutions or corporate entities. *Id.* at 1052-55. Hence, as a matter of law, a plaintiff cannot assert "systemic" claims under the FTCA but must instead allege tortious conduct by individual federal employees, acting within the scope of their employment.

In *Lee v. United States*, 2020 WL 6573258 (D. Ariz. Sept. 18, 2020), the court applied *Adams* in a FTCA action based on the "generalized negligence" of various government employees, contractors, and agents responsible for operating a prison facility. *Id.* at *6. Applying *Adams*, the court dismissed plaintiff's FTCA claims, holding that the "FTCA applies only to 'the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his office or employment,' not to generalized theories of negligence asserted against the staff and employees of federal institutions as a whole." *Id.* (emphasis in original).

Here, as in *Lee*, Plaintiffs seek to raise institutional or "systemic" tort claims against the United States, alleging that various unidentified federal employees and officials of

many different federal agencies engaged in tortious conduct "as a whole," rather than alleging specific tortious acts or omissions on the part of individual federal employees. *Lee*, 2020 WL 6573258 at *6. The FTCA's limited waiver of sovereign immunity does not encompass "systemic" tort claims or "generalized theories" of tortious conduct "asserted against the staff and employees of federal institutions as a whole." *Id.* Because that is what Plaintiffs allege here, their claims are not cognizable under the FTCA and should be dismissed. *See, e.g.*, *Meier v. United States*, 2006 WL 3798160, at *3-4 (N.D. Cal. Dec, 22, 2006) (dismissing claim based on corporate negligence theory), *aff'd*, 310 F. App'x 976 (9th Cir. 2009); *F.R. v. United States*, No. CV-21-00339, 2022 WL 2905040 at *3 (D. Ariz. July 22, 2022) ("[A] cognizable FTCA claim must be predicated on the tortious misconduct of individual government employees, rather than on alleged wrongdoing by the United States or its agencies writ large."); *B.A.D.J. v. United States*, No. CV-21-00215, 2022 WL 11631016 *5 (D. Ariz. Sept. 30, 2022) ("To the extent Plaintiffs allege harms resulting from policymaking or agency-wide misconduct, the Court lacks subject matter jurisdiction over those claims."). Plaintiffs allege that the "U.S. Government," and "high ranking officials at CBP, DHS and ORR" engaged in the alleged conduct underlying their claims. *See e.g.,* SAC ¶ 2, 20-25. Notably, however, Plaintiffs fail to identify any tortious conduct on the part of a specific, individual federal employee as required to be actionable under the FTCA. *See generally* SAC.

## VIII.  Plaintiffs' claims are not actionable under Arizona law.

In addition, Plaintiffs' claims should be dismissed because they arise from their lawful detention and are therefore barred under applicable state law. Under Arizona law, an individual cannot recover in tort for injuries sustained as a consequence of his or her own criminal conduct and lawful detention. *Muscat v. Creative Innervisions LLC*, 244 Ariz. 194, 198 (Ct. App. 2017). For example, in *Muscat*, the Arizona Court of Appeals held that a plaintiff, who sought to recover in tort for "pain, suffering, distress, [and] mental and emotional anguish," had not suffered a "legally cognizable injury" because the alleged harms flowed from his lawful incarceration. *Id.* at 198-99. In doing so, the court explained,

"recognizing the legal consequences of a ward's criminal conduct as a legally cognizable injury would distort the long-established public policy of personal accountability for criminal behavior." *Id.* at 198.

Here, Plaintiffs were lawfully detained after crossing the United States-Mexico border in violation of federal law.  As a direct consequence of being referred for prosecution for this crime, Plaintiffs were securely detained and separated from their minor children in accordance with federal statutes.  Plaintiffs' tort claims, which seek to recover for harm suffered as a result of that separation, are not actionable under state law because, as in *Muscat*, the harm that Plaintiffs allege here flows from their lawful detention.  *See Muscat*, 244 Ariz. at 198.

**IX.    Plaintiffs' negligence claim should be dismissed for failure to state a claim.**

Alternatively, Plaintiffs' negligence claim (Count 2) should be dismissed for failure to state a claim.  Under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint's allegations must give defendants "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Twombly*, 550 U.S. at 555.  The federal pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a negligence claim under Arizona law, a plaintiff must allege sufficient facts to support the following four elements: "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 214 Ariz. 141, 143 (Ariz. 2007).  "To bring a colorable FTCA claim, Plaintiff must first meet the minimum pleading standards required to state an underlying negligence claim against a federal employee for which the Government can then be held liable." *Lee,* 2020 WL 6573258, at *6.  Plaintiff fails to do so here.

Plaintiffs allege that the United States "acting by and through the federal agencies, federal officials, and federal employees referenced above, had a duty to Plaintiffs and their children to act with ordinary care and prudence so as not to cause harm or injury to Plaintiffs and their children." SAC ¶ 148.  In addition to failing to identify the source of Arizona law imposing such a duty, *see Delta Sav. Bank v. United States*, 265 F.3d 1017, 1025 (9th Cir. 2001) (noting "any duty that the United States owed to plaintiffs must be found in . . . state tort law"), the SAC is void of specific factual allegations that any particular federal employee "was negligent in performing his or her responsibilities" relating to the alleged detention and separation, "or how any of the particular employee's negligent acts or omissions contributed" to Plaintiff's alleged injury.  *See Lee*, 2020 WL 6573258, at *6.   The SAC does not identify the specific individual federal employee conduct that Plaintiffs claim was negligent.  Rather, Plaintiffs merely allege that the federal government and unidentified federal employees referenced throughout the SAC "failed to act with ordinary care and breached its duty of care owed to Plaintiffs and their children," without specifying what particular acts or omissions serve as the basis of their negligence claim.  *See* SAC ¶ 155.

Courts in this District have not hesitated to dismiss FTCA suits that relied on general allegations against unspecified federal employees and that failed to plead how any specific federal employee breached a duty of care.  *See, e.g., Lee*, 2020 WL 6573258, at *5-6 (holding "allegations—generically stated and shared by up to a dozen federal employees— are insufficient to state an FTCA claim against the Government"); *Tsosie v. United States*, 2019 WL 2476601, at *4-5 (D. Ariz. June 13, 2019) (dismissing FTCA claim holding that plaintiffs' "failure to name specific healthcare providers in the Complaint or identify how these providers were negligent does nothing more than make conclusory statements"); *Snyder v. United States*, 2013 WL 1867008, at *1 (D. Ariz. May 2, 2013) (dismissing FTCA claim holding, while the complaint "mentions many doctors . . . and generally asserts that they engaged in various forms of misconduct," plaintiff has not "pled specific facts as to how any of the individual doctors" breached a duty of care); *Mathis v. United*

1    *States*, 2011 WL 4352291, at *1 (D. Ariz. Sept. 16, 2011) (holding "claims asserted against

2    unnamed 'medical staff' are insufficient to state a . . . claim under Rule 8"); *Dominguez ex*

3    *rel. Dominguez Rivera v. Corbett*, 2010 WL 3619432, at *7-8 (D. Ariz. Aug. 5, 2010)

4    (dismissing FTCA claim holding claim "does not contain facts regarding any individual

5    employee (by either name or description), who, acting within the scope of their

6    employment, committed a tort against Plaintiff").

7          Plaintiffs must allege sufficient facts—not simply "labels and conclusions" or

8    [t]hreadbare recitals of the elements of a cause of action"—that would give the government

9    "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S.

10   at 555 (internal quotations and citation omitted); Iqbal, 556 U.S. at 678. "Absent specific

11   allegations regarding the roles and responsibilities of individual federal employees, how

12   each employee breached his or her duties of care," including the specific conduct alleged

13   to have breached said duties, "and how their negligent conduct caused [Plaintiff] harm,"

14   Plaintiffs' allegations are "too vague and conclusory" to give the United States fair notice

15   of Plaintiffs' negligence claim and the grounds upon which it rests. *See Lee*, 2020 WL

16   6573258, at *7. Accordingly, Plaintiffs' negligence claim should be dismissed for failure

17   to state a claim under 12(b)(6).

18   **CONCLUSION**

19         For the foregoing reasons, this action should be dismissed.

20       RESPECTFULLY SUBMITTED June 13, 2025.

21                         TIMOTHY COURCHAINE

22                         United States Attorney

23                         District of Arizona

24                         *s/Theo Nickerson*

25                         THEO NICKERSON

26                         Assistant United States Attorney

                                *Attorneys for Defendant*

27

28