**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

J.E.B., et al.,

         Plaintiffs,

v.

United States of America,

         Defendant.

No. CV-24-03069-PHX-DGC

**ORDER**

Plaintiffs J.E.B., on behalf of himself and his minor child F.B., and L.M.L., on behalf of herself and her minor child L.J.L, assert claims for intentional infliction of emotional distress ("IIED"), negligence, and loss of consortium against Defendant United States.  Defendant moves to dismiss the action.  Doc. 31.  No party requests oral argument.  For reasons stated below, the Court will grant the motion in part.

**I.    Background.**

    **A.    Immigration Policy.**

Plaintiffs assert claims relating to the Zero Tolerance Policy adopted during the first Trump Administration.  Doc. 16.  Under the policy, federal immigration officials apprehended individuals who illegally crossed the U.S.-Mexico border and detained them pending the outcome of removal proceedings.  Exec. Order No. 13,767, 82 Fed. Reg. 8793 (January 25, 2017); *see also* Memorandum from the Attorney General to Federal Prosecutors Along the Southwest Border (Apr. 6, 2018), https://www.justice.gov/opa/press-release/file/1049751/download (last visited Nov. 17, 2025).  Children traveling

with detained parents were deemed "unaccompanied" and were separated from their parents and placed in the custody of the Department of Health and Human Services ("HHS") Office of Refugee Resettlement ("ORR"). Exec. Order No. 13,767, 82 Fed. Reg. 8793 (January 25, 2017).

**B.    J.E.B. and F.B.**

J.E.B. and his ten-year-old son, F.B., are Guatemalan nationals who entered the United States at the U.S.-Mexico border near Yuma, Arizona in February 2018. Doc. 16 ¶¶ 17, 78. They approached U.S. Customs and Border Protection ("CBP") officers and sought asylum. *Id*. CBP took them into custody and brought them to a detention facility in Yuma. *Id*. ¶ 79. At the detention center, their belongings and identification documents were confiscated, and they were locked in a cell with about 90 other people. *Id*. ¶¶ 79-80. Two days later, they were taken to a CBP office where J.E.B. and F.B. were forcibly separated. *Id*. ¶¶ 83-84. J.E.B. was unable to speak to F.B. for three weeks after their separation and did not see his son for ten months. *Id*. ¶¶ 85, 87. J.E.B. was transferred to Immigration and Customs Enforcement ("ICE") custody for two months before being deported to Guatemala without F.B. *Id*. ¶¶ 86, 88.

F.B. was placed in ORR custody and transferred to a facility in Texas. *Id*. ¶ 89. After attempting to harm himself, he was transferred to the Shiloh Treatment Facility, also in Texas, where he was given psychotropic medication. *Id*. ¶¶ 89-90. Parental consent was not obtained before the medication was administered. *Id*. ¶ 90. After ten months, F.B. was deported from the treatment facility to Guatemala "without an adequate supply of medication, and without a plan for his continued treatment[.]" *Id*. ¶ 92.

**C.    L.M.L. and LJ.L.**

L.M.L. and her six-year-old son L.J.L. are Guatemalan nationals who entered the United States at the U.S.-Mexico border near Yuma in May 2018. *Id*. ¶¶ 18, 98. L.M.L. was pregnant at the time. *Id*. ¶ 108. They approached CBP officers and sought asylum. *Id*. ¶ 98. CBP took them into custody and brought them to a detention facility in Yuma, where they were put in a cell with dozens of other families. *Id*. ¶ 103. Two days later,

L.M.L. and L.J.L. were forcibly separated.  *Id*.  L.M.L. did not receive any information on L.J.L.'s whereabouts or speak to him for three weeks.  *Id*. ¶ 104.  L.M.L. was transferred to ICE custody for about a month before being deported without L.J.L.  *Id*. ¶ 107, 113.

L.J.L. was placed in an ORR facility in New York.  *Id*. ¶ 111.  He was allowed to speak with his mother by phone only once while she was in ICE custody.  *Id*. ¶ 113.  After almost three months, L.J.L. was deported to a military base in Guatemala.  *Id*. ¶ 114.

### D.    Plaintiffs' Cases Against the United States.

Plaintiffs participated in the *Ms. L.* class action litigation, through which they were granted re-entry to the United States under humanitarian parole in September 2021. *Id.* ¶ 119, 124. They subsequently filed administrative claims with the Department of Homeland Security, CBP, ICE, and HHS on November 11, 2021.  *Id*. ¶ 15.

Plaintiffs filed this action against Defendant on November 5, 2024.  Doc. 1.  They assert claims for IIED, negligence, and loss of consortium for harm to the parent-child relationship.  Doc. 16 ¶¶ 132-62.  Defendant moves to dismiss these claims, asserting the Court lacks subject matter jurisdiction and Plaintiffs' complaint fails to state a claim. Doc. 31.

## II.    Statute of Limitations.

Defendant argues that Plaintiffs' administrative claims accrued in February and May 2018 and are untimely because Plaintiffs did not file their claims with the appropriate administrative agencies within two years of that accrual – by February and May 2020. Doc. 37 at 11.  Plaintiffs admit that more than two years passed before they filed their administrative claims, but argue the limitations period should be equitably tolled.  Doc. 16 ¶¶ 120, 123.

Under the Federal Tort Claims Act ("FTCA"), if a claim is not "presented in writing to the appropriate Federal agency within two years after such claim accrues[,]" it is "forever barred[.]"  28 U.S.C. § 2401.  The "FTCA's time bars are nonjurisdictional[,]" and the statute therefore "does not preclude tolling when circumstances warrant."  *United States v. Wong*, 575 U.S. 402, 420 (2015).  The Ninth Circuit has recognized equitable tolling in

two situations: (1) when wrongful conduct by the defendant prevents plaintiffs from bringing a claim, and (2) when "extraordinary circumstances beyond plaintiffs' control" prevent timely filing. *Alvarez-Machain v. United States*, 96 F.3d 1246, 1251 (9th Cir. 1996) (citation omitted).

"Because the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, it 'is not generally amenable to resolution on a Rule 12(b)(6) motion.'" *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995) (citation omitted); *see also Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1003 (9th Cir. 2006) (same). A complaint cannot be dismissed on statute of limitations grounds "unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Supermail Cargo, Inc.*, 68 F.3d at 1207.

Plaintiffs argue the limitations period should be equitably tolled because Defendant prevented them from accessing administrative agencies and courts by "wrongfully and illegally" deporting them without considering their asylum requests. Doc. 16 ¶¶ 120-21, 123. After being granted parole through the *Ms. L.* class action litigation, Plaintiffs returned to the United States and promptly filed their claims. *Id.* ¶ 119, 122, 124.

Defendant contends that Plaintiffs were not prevented from asserting their claims from Guatemala because "[a]ll that is required to present an administrative claim is a pen, paper, and a mailbox, or email access." Doc. 31 at 12. Defendant notes that other individuals who were removed under the Zero Tolerance Policy presented timely administrative claims from outside of the United States. *Id*. Defendant also argues that Plaintiffs' participation in the class action litigation shows they were able to access the courts. *Id*. at 14.

Defendant cites three cases to support its arguments. The first two simply state that deportation did not toll the statute of limitations, but do not explain why. *Pequeno-Garcia v. Zarate*, No. 3:17-CV-867-L-BN, 2017 WL 2470996, at *2 (N.D. Tex. May 4, 2017), *report and recommendation adopted*, No. 3:17-CV-867-L, 2017 WL 2463324 (N.D. Tex. June 7, 2017); *Zambuto v. Cnty. of Broward*, No. 08-61561-CIV, 2010 WL 2162893, at *1

(S.D. Fla. May 26, 2010). The third case, *Ferrer-Ayala v. Prandi*, No. C-95-4645 EFL, 1996 WL 371303 (N.D. Cal. June 21, 1996), was an action brought under 42 U.S.C. § 1983. *Id*. at *1. Because § 1983 does not have its own statute of limitations, the court applied the California statute of limitations and the California Civil Procedure Code. *Id*. at *1-2. Statutory tolling under California law is not at issue in this case and *Ferrer-Ayala* is not helpful to this court's analysis.

Plaintiffs cite *Avalos-Palma v. United States*, No. CIV.A. 13-5481 FLW, 2014 WL 3524758 (D.N.J. July 16, 2014), which discusses the Ninth Circuit's decision in *Alvarez-Machain* and other cases that find "equitable tolling is appropriate when a plaintiff is physically prevented from accessing a 'functioning court' or 'if there is no real possibility of gaining relief in court.'" *Id.* at *5. In *Avalos-Palma*, the court concluded that the Plaintiff was wrongfully deported to Guatemala and could not have prosecuted his case effectively while outside of the United States because "he would be precluded from appearing at any of the proceedings that are required of a civil litigant, including depositions, discovery proceedings, and ultimately, a trial." *Id*. at *6. Plaintiffs argue the same is true here, and that they diligently pursued their claims upon returning to the United States. Doc. 32 at 5.

Defendant argues that the *Avalos-Palma* case is distinguishable because (1) the tort claim in *Avalos-Palma* was based on his wrongful deportation, not family separation, and (2) he was removed from the country in violation of a mandatory stay, while Plaintiffs were subject to valid removal orders. Doc. 37 at 2. But the kind of claims Plaintiffs bring, and the validity or invalidity of their removal, are not relevant to whether they are entitled to equitable estoppel. The relevant question is whether they were able to assert their claims from Guatemala. On this point, Defendant notes that Plaintiffs managed to participate in the *Ms. L.* litigation from Guatemala. Doc. 31 at 14. But while the complaint states they diligently pursued their rights through that litigation, it does not describe any direct participation they had as members of the class or any steps they took to participate. They were not class representatives, and their participation as class members was likely more

passive than active.  At this stage of the litigation, the Court cannot say that Plaintiffs' membership in the *Ms. L.* case shows they could have effectively asserted their administrative claims from Guatemala.

Defendant attaches various removal-related papers to its reply brief (Doc. 37-1), but the Court's decision on a motion to dismiss is limited to the face of the complaint.  *Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1997).  The Court cannot determine from the face of Plaintiffs' complaint that there is no set of facts that would establish the timeliness of Plaintiff's claim, and Court therefore cannot dismiss the complaint on statute of limitations grounds.  *Supermail Cargo, Inc.*, 68 F.3d at 1207.  Defendant can raise this issue at summary judgment or trial when the record is more developed.

## III.    Sovereign Immunity.

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  A facial attack, like this one, asserts that the allegations in the operative pleading, even if taken as true, are "insufficient on their face to invoke federal jurisdiction."  *Id*.  In addressing a facial attack, the Court takes the allegations of the complaint as true.  *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009) (citation omitted).  "A sovereign immunity defense is 'quasi-jurisdictional' in nature and may be raised in . . . a Rule 12(b)(1) motion."  *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 927 n.2 (9th Cir. 2017).

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."  *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  Before a court "may exercise jurisdiction over any suit against the government, [it] must have 'a clear statement from the United States waiving sovereign immunity, together with a claim falling within the terms of the waiver.'"  *Jachetta v. United States*, 653 F.3d 898, 903 (9th Cir. 2011) (quoting *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003)); *see also United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 923-24 (9th Cir. 2009) (discussing the relationship between sovereign immunity and subject matter jurisdiction).  Under the FTCA, the United States is liable for tort claims

"in the same manner and to the same extent as a private individual under like circumstances[.]"  28 U.S.C. § 2674.  But this liability "is subject to various exceptions[.]"  *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (citing 28 U.S.C. § 2680).

Defendant makes several arguments for why Plaintiffs' claims fall under the FTCA's exceptions and therefore are not included in the FTCA's waiver of sovereign immunity: (1) Plaintiff's claims are precluded by the discretionary function exception; (2) the claims are precluded by the due care exception; (3) there is no private personal analogy for the claims; (4) the claims include constitutional torts; and (5) the claims include institutional torts.  Doc. 31 at 22-31.  The Court will address each of these arguments.

### A.    Discretionary Function Exception.

Defendant argues that the decision to detain and separate Plaintiffs was a "discretionary and policy-based decision" that "falls squarely within the discretionary function exception" to the government's immunity waiver.  Doc. 31 at 18, 22.  It also asserts that allegations regarding the conditions of Plaintiffs' detention fall under this exception.  *Id.* at 22-23.

The discretionary function exception bars claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  The Supreme Court has established a two-part test for determining when the discretionary function exception applies.  *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988).  First, courts ask whether the challenged action involved an element of judgment.  *Id.* at 536; *Gonzalez v. United States*, 814 F.3d 1022, 1027 (9th Cir. 2016).  This part of the test is not satisfied if a "federal statute, regulation, or policy specifically prescribes a course of action for any employee to follow."  *Berkovitz*, 486 U.S. at 536.  Second, if there is room for judgment, courts determine whether the judgment concerns public policy.  *Id.*  This part of the test "prevents judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy."  *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984).  "[T]he

government bears the ultimate burden of establishing that the exception applies." *Green v. United States*, 630 F.3d 1245, 1249 (9th Cir. 2011).

Courts have found that implementation of the Zero Tolerance Policy is an "ordinary exercise of prosecutorial discretion[.]" *B.A.D.J. v. United States*, No. CV-21-00215-PHX-SMB, 2022 WL 11631016, at *2 (D. Ariz. Sept. 30, 2022). "[P]rosecutorial judgment is a matter of choice, and obviously grounded in considerations of public policy – such as the United States Attorney General's priorities and United States Attorneys' discretion – that is intended to be shielded by the discretionary function exception." *Pena Arita v. United States*, 470 F. Supp. 3d 663, 686-87 (S.D. Tex. 2020). But the Ninth Circuit has held that "[t]he Constitution can limit the discretion of federal officials such that the FTCA's discretionary function exception will not apply." *Nurse v. United States*, 226 F.3d 996, 1002 n.2 (9th Cir. 2000). Thus, the discretionary function exception will not apply if "the complaint alleges that the policy-making defendants promulgated discriminatory, unconstitutional policies which they had no discretion to create." *Id.* at 1003. While the Ninth Circuit declined to "make any decision regarding the level of specificity with which a constitutional proscription must be articulated in order to remove the discretion of a federal actor[,]" *id.* at 1002 n.2, district courts have interpreted the standard to be "something akin to a plausibility standard," *J.P. v. United States*, 679 F. Supp. 3d 911, 924-25 (D. Ariz. 2023).

Plaintiffs' complaint alleges that the Zero Tolerance Policy "intentionally violated the constitutional rights of those separated, including Plaintiffs' substantive due process right to family integrity." Doc. 16 ¶ 125. They emphasize the court's decision in *Ms. L.*, which stated that the plaintiffs "demonstrated the likelihood of a deprivation of their constitutional rights" because their case involved "the constitutional liberty interest 'of parents in the care, custody, and control of their children,' which 'is perhaps the oldest of the fundamental liberty interests recognized by' the Supreme Court." *Ms. L. v. U.S. Immigr. & Customs Enf't ("ICE")*, 310 F. Supp. 3d 1133, 1146, 1148 (S.D. Cal. 2018), *modified sub nom. Ms. L. v. U.S Immigr. & Customs Enf't ("ICE")*, 330 F.R.D. 284 (S.D.

Cal. 2019) (citation modified).  Other courts have agreed with this conclusion.  *See, e.g.*, *C.M. v. United States*, 699 F. Supp. 3d 809, 828 (D. Ariz. 2023) ("The United States' separation of Plaintiffs for weeks or months unquestionably interfered with Plaintiffs' right to family integrity.").  "Because Plaintiffs plausibly allege that the government separation policy may have violated their due process rights, the discretionary function exception does not apply" to claims that stem from that violation.  *B.A.D.J.*, 2022 WL 11631016, at *3.[1]

Defendant also argues that any claims based on detention facility conditions are barred under the discretionary function exception.  Doc. 31 at 22-23.  But "[b]ecause each of Plaintiffs' causes of action stem from [their] separation, none are barred by the discretionary function exception." *A.P.F. v. United States*, 492 F. Supp. 3d 989, 996 (D. Ariz. 2020); *see also id*. at 996-97 ("Allegations related to conditions of confinement (including the degree of permitted communication), treatment of Plaintiff Children during and after the separations (including during foster care), and the government's tracking system (or lack thereof) are factual allegations primarily aimed at demonstrating the harm resulting from the separations.").  The Court cannot find that the discretionary function exception to the FTCA's sovereign immunity waiver precludes Plaintiffs' claims.

## B.    Due Care Exception.

Defendant argues that the due care exception to the FTCA applies to Plaintiffs' claims because the minor Plaintiffs were placed in ORR custody as required by statute. Doc. 31 at 24.  The FTCA does not authorize "claim[s] based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid."  28 U.S.C. § 2680(a).  The due care exception avoids "tests by tort action of the legality of statutes and regulations." *Dalehite v. United States*, 346 U.S. 15, 33 (1953).

---

[1] The Court shares some of the misgivings expressed by other judges in this District regarding the breadth of the *Nurse* rule and its seeming elimination of the discretionary function exception.  *See J.P.*, 679 F. Supp. 3d at 925; *B.A.D.J.*, 2022 WL 11631016, at *3. But like those judges, the Court is obligated to apply Ninth Circuit law in this case.

To determine whether the due care exception applies, district courts in this circuit apply a two-prong test found in *Welch v. United States*, 409 F.3d 646 (4th Cir. 2005). *See, e.g.*, *A.F.P. v. United States*, No. 1:21-cv-00780-DAD-EPG, 2022 WL 2704570, at *14 (E.D. Cal. July 12, 2022); *Nunez Eueeda v. United States*, No. 2:20-CV-10793-VAP-GJSX, 2021 WL 4895748, *3 (C.D. Cal. Apr. 27, 2021); *C.M. v. United States*, No. CV-19-05217-PHX-SRB, 2020 WL 1698191, *3 (D. Ariz. Mar. 30, 2020); *Ferguson v. United States*, No. 15CV1253 JM, 2016 WL 4793180, at *7 (S.D. Cal. Sept. 14, 2016); *Kwai Fun Wong v. Beebe*, No. CIV. 01-718-ST, 2006 WL 977746, at *8 (D. Or. Apr. 10, 2006). That test provides that the due care exception bars claims if (1) "the statute or regulation in question specifically pr[e]scribes a course of action for an officer to follow," and (2) "the officer exercised due care in following the dictates of that statute or regulation." *Welch*, 409 F.3d at 652. The United States bears the burden of proving the due care exception applies. *See Prescott v. United States*, 973 F.2d 696, 702 (9th Cir. 1992) ("the government bears the ultimate burden of proving the applicability of an exception to the FTCA"). If the United States fails to establish either prong, the exception does not apply.

Defendant asserts that 8 U.S.C. § 1232(b)(3) requires that unaccompanied alien children ("UACs") be transferred to HHS custody within 72 hours of the agency determining they are UACs, except in extraordinary circumstances.[2] Doc. 31 at 24. As Defendant notes, however, courts in this circuit have repeatedly rejected reliance on this statute in cases where a guardian was amenable to prosecution but was not charged with a crime. Doc. 31 at 24 n.8; *see also J.P.*, 679 F. Supp. 3d at 928 (collecting cases).[3] Defendant fails to cite a statute or regulation "requiring the detention of individuals who are 'amenable to prosecution' in facilities different from those who are not 'amenable to

---

[2] A UAC is a child below 18 years of age with no lawful immigration status who either does not have a parent or legal guardian in the United States or does not have an "available" parent or legal guardian in the United States. 6 U.S.C. § 279(g)(2).

[3] Defendant asserts in a footnote that this caselaw should not apply because the decision to separate Plaintiffs was discretionary. Doc. 31 at 24 n.8. But as discussed above, this decision is not protected by the discretionary function exception.

1    prosecution,' or any statute more generally requiring the separation of Plaintiffs upon their

2    entry into the country." *A.P.F.*, 492 F. Supp. 3d at 995-96.  Rather, the separations were

3    executed according to executive policy (*see* Doc. 16 ¶¶ 23, 38), and the Court cannot find

4    that Defendant's course of action was prescribed by law.  *See A.P.F.*, 492 F. Supp. 3d at

5    996 ("Actions taken pursuant to executive policy are not shielded by the due care

6    exception.").

7       **C.    Private Person Analogy.**

8       The FTCA's waiver of sovereign immunity is limited to "circumstances where the

9    United States, if a private person, would be liable to the claimant in accordance with the

10   law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  Thus,

11   sovereign immunity is waived only when there is a "persuasive analogy with private

12   conduct."  *Westbay Steel, Inc. v. United States*, 970 F.2d 648, 650 (9th Cir. 1992) (citation

13   omitted).  Defendant argues that Plaintiffs' claims fail because there is no private person

14   analogy for the harms alleged.  Doc. 31 at 25.

15      Plaintiff brings torts claims for IIED, negligence, and loss of consortium arising

16   from their separation.  Doc. 16 ¶¶ 132-62.  "[T]here are many situations where federal

17   employees are held liable for torts under the FTCA[.]"  *B.A.D.J.*, 2022 WL 11631016,

18   at *4.  While the federal government "could never be exactly like a private actor, a court's

19   job in applying the standard is to find the most reasonable analogy."  *Dugard v. United*

20   *States*, 835 F.3d 915, 919 (9th Cir. 2016) (citation omitted).  Defendant asserts that because

21   the harms alleged "stem from the Government's decisions to enforce federal criminal and

22   immigration law," and "only the federal government has the authority to enforce federal

23   law and make determinations concerning the detention of aliens," there is no private

24   analogy for Plaintiffs' claims.  Doc. 31 at 25-26.  Defendant cites several cases where

25   immigration decisions were deemed "an inherently government function" with no private

26   analogy.  *Id*. 26-27.  But those cases do not involve family separation.  *See Bhuiyan v.*

27   *United States*, 772 Fed. Appx. 564, 565 (9th Cir. 2019) (immigration benefits); *Elgamal v.*

28   *Bernacke*, 714 Fed. Appx. 741, 742 (9th Cir. 2018) (denial of an immigration status

adjustment application); *Akutowicz v. United States*, 859 F.2d 1122, 1123-24 (2d Cir. 1988) (citizenship revocation); *Mazur v. United States*, 957 F. Supp. 1041, 1042 (N.D. Ill. 1997) (visa lottery application processing); *Omoniyi v. Dep't of Homeland Sec.*, 2012 WL 892197, at *2-3 (S.D.N.Y. Mar. 13, 2012) (denial of naturalization application). And Defendant does not explain why a private person could not be held liable for the torts identified in Plaintiffs' complaint if that person forcibly separated Plaintiffs.

"It is possible to 'define governmental action in almost any situation narrowly enough to render it uniquely governmental.'" *Fuentes-Ortega v. United States*, 640 F. Supp. 3d 878, 884 (D. Ariz. 2022) (citations omitted). But "[t]he better approach is to focus on the behavior involved, not the legal labels applied, and then look for analogies with private conduct." *Id*. (citation omitted). In cases involving family separation, courts in this district repeatedly have found that claims of IIED, negligence, and loss of consortium have sufficient private analogies to survive on a motion to dismiss. *See F.R. v. United States*, No. CV-21-00339-PHX-DLR, 2022 WL 2905040, at *3 (D. Ariz. Jul. 22, 2022) (collecting cases). The Court finds these cases persuasive.

### D.    Constitutional Torts.

The FTCA's waiver of sovereign immunity is limited to circumstances where the United States, if a private person, would be liable to the claimant "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The Supreme Court "has consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State—the source of substantive liability under the FTCA." *F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994) (citations omitted). "Constitutional torts are, by definition, founded on federal, not state law. Therefore, federal district courts have no jurisdiction over the United States where claims allege constitutional torts." *Pereira v. United States Postal Service*, 964 F.2d 873, 876 (9th Cir. 1992); *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994) ("[T]he United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims."). When evaluating whether or not a claim is for a constitutional tort, the court must "look beyond the complaint's characterization to the

conduct on which the claim is based." *Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1203 (9th Cir. 2003) (citation modified).

Defendant argues Plaintiffs' claims for IIED, negligence, and loss of consortium are constitutional torts cloaked as common law claims because they are based in part on conditions of confinement, and cases challenging conditions of confinement are not actionable under the FTCA. Doc. 31 at 28. In support, Defendant cites a case from the Southern District of Texas. In *Aguilar v. United States*, No. 1:16-CV-048, 2017 WL 6034652 (S.D. Tex. June 7, 2017), the court looked to Fifth Circuit precedent holding that cases involving conditions of confinement are constitutional attacks that should be brought as *Bivens* claims. *Id*. at *4. It applied this holding to the plaintiff's allegations – that CBP agents "maintained holding cells at low temperatures to abuse and punish detainees; refused to provide detainees with hygiene products; acted with deliberate indifference to Plaintiff's request for medical assistance; refused to provide Plaintiff with adequate nutrition, drinking water, bedding, and privacy; and kept the holding cell overcrowded" – and found that the IIED claim amounted to a condition of confinement claim barred under the FTCA. *Id*.

Defendant does not cite, and the Court has not found, any cases from the Ninth Circuit holding that conditions of confinement claims are constitutional attacks that must be brought under *Bivens*, and other courts in this circuit have held that claims against CBP officers similar to those asserted in this case could proceed under the FTCA when they contained "plausible allegations sounding in tort." *J.P.*, 679 F. Supp. 3d at 927 (claims for IIED, negligence, loss of consortium, and abuse of process). The Court therefore cannot find that Plaintiffs' common law tort claims serve to "sidestep" the FTCA. *Snow-Erlin v. United States*, 470 F.3d 804, 809 (9th Cir. 2006).

### E.    Institutional Torts.

The FTCA waives sovereign immunity for the tortious acts or omissions of individual employees. *Adams v. United States*, 420 F.3d 1049, 1054 (9th Cir. 2005); *see also* 28 U.S.C. § 2671. Tortious acts or omissions of government agencies or the federal

government as a whole cannot be challenged under the FTCA.  *B.A.D.J. v.*, 2022 WL 11631016, at *5. Defendant argues that Plaintiffs' claims are "institutional" and "systemic," brought against federal agencies and the government "as a whole," and "fail to identify any tortious conduct on the part of a specific individual federal employee[.]" Doc. 31 at 29-30.

Plaintiffs sue Defendant for acts "by and through DHS, HHS, and the Department of Justice . . . and their employees, officers, and agents," including DHS employees who separated Plaintiffs; DHS employees who were responsible for supervising and managing detained individuals at CBP and ICE facilities; HHS employees responsible for supervising and managing the detention of UACs; and high-ranking officials from DHS, HHS, DOJ, and the White House who designed and implemented the Zero Tolerance Policy.  Doc. 16 ¶¶ 19, 21-23.

"To the extent Plaintiffs allege harms resulting from policymaking or agency-wide misconduct, the Court lacks subject matter jurisdiction over those claims."  *B.A.D.J. v.*, 2022 WL 11631016, at *5.  The Court will grant Defendant's motion with respect to these categories of claims.   But Plaintiffs' complaint goes beyond criticism of the family separation policy and contains several allegations of specific actions by individual federal employees as well.  *See, e.g.*, Doc. 16 ¶¶ 80, 84, 103, 108.   To the extent Plaintiffs' allegations concern individual employee conduct, the Court has jurisdiction.

**IV.    Failure to State a Claim.**

Dismissal for failure to state a claim under Rule 12(b)(6) is appropriate when the complaint lacks a cognizable legal theory or fails to allege facts sufficient to support its theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The court treats all allegations of material fact in the complaint

1  as true and construes them in the light most favorable to the plaintiff.  *Cousins v. Lockyer*,

2  568 F.3d 1063, 1067 (9th Cir. 2009).

3      **A.**    **Actionability under Arizona Law.**

4        Defendant argues that Plaintiffs cannot recover under the FTCA because their

5  claims are not actionable under Arizona law.  Doc. 31 at 30.  It cites *Muscat v. Creative*

6  *Innervisions LLC*, 418 P.3d 967 (Ariz. Ct. App. 2017), for the proposition that plaintiffs

7  injured as a result of their participation in criminal or wrongful conduct cannot recover in

8  tort.  Doc. 31 at 30-31.  Defendant asserts that because Plaintiffs crossed the U.S.-Mexico

9  border illegally, they cannot assert tort claims arising out of their subsequent detention and

10  separation.  *Id*. at 30.  But as the court in *Muscat* noted, "Arizona has never explicitly

11  addressed the wrongful conduct rule," and the court did not need to decide whether it

12  applied to make its decision.  *Muscat*, 418 P.3d at 970.  The court found that "[g]iven that

13  his alleged injuries arise only out of a legally imposed incarceration, Muscat alleges no

14  injury that is distinct from the consequences of his prison sentence."  *Id*. at 971.

15        This holding is inapposite to Plaintiffs' claims.  In *Muscat*, the plaintiff claimed

16  "loss of freedom, loss of participation in life's activities, pain, suffering, distress, mental

17  and emotional anguish, anxiety, and a decrease in the quality of life" arising out of his

18  criminal incarceration.  *Id*.  As other courts in this district have noted, immigration arrests

19  and detention are civil, not criminal.  *J.P.*, 679 F. Supp. 3d at 929.  And while Plaintiffs

20  could be prosecuted for illegally crossing the border, they were never charged with criminal

21  offenses.  Doc. 32 at 13.  Thus, the Court cannot find that the wrongful conduct rule or the

22  holding in *Muscat* apply here.

23      **B.**    **Viability of the Negligence Claim.**

24        To establish liability for negligence under Arizona law, Plaintiffs must prove that

25  (1) Defendant had a duty to conform to a certain standard of care, (2) Defendant breached

26  that duty, (3) a causal connection exists between Defendant's conduct and the resulting

27  injuries, and (4) actual damages.  *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007).

28

1    Defendant asserts that Plaintiffs' complaint fails adequately to allege duty and breach.

2    Doc. 31 at 32.

3            **1.    Duty.**

4            "Whether a duty exists is a question of law and must be determined before case-

5    specific facts are considered." *Avitia v. Crisis Preparation & Recovery Inc.*, 536 P.3d 776,

6    782 (Ariz. 2023); *see also Westerman v. Ernst*, 563 P.3d 647, 652 (Ariz. Ct. App. 2025)

7    ("Duty is 'for the court to decide' as a threshold issue because 'absent some duty, an action

8    for negligence cannot be maintained.'") (citation omitted).  Arizona law does not hold that

9    "one owes a duty of reasonable care at all times to all people under all circumstances[.]"

10   *Gipson*, 150 P.3d at 233 (citation omitted).  Rather, "a duty in the negligence context arises

11   either from special relationships or public policy, and [courts] look primarily to statutes

12   and common law to create and define duty." *Avitia*, 536 P.3d at 782.

13           Defendant asserts that Plaintiffs do not identify a source of the alleged duty of

14   "ordinary care and prudence."  Doc. 31 at 32.  But Plaintiffs allege Defendant had a duty

15   to them while they were in custody, and courts have held that "[l]ike a jailor-prisoner

16   relationship, federal immigration officials owe a duty of care to noncitizens that they detain

17   and hold in custody."  *C.M.*, 699 F. Supp. 3d at 835; *see also J.P.*, 679 F. Supp. 3d at 930

18   ("Arizona law recognizes that public policy requires a duty of care 'in situations involving

19   involuntary detainment or commitment.'") (citation omitted).  Plaintiffs have sufficiently

20   pled Defendant owed them a duty.

21           **2.    Breach.**

22           To establish breach, a plaintiff must show the defendant's actions fell below the

23   standard of care.  *Rudolph v. Ariz. B.A.S.S. Fed.*, 898 P.2d 1000, 1004 (Ariz. Ct. App.

24   1995).  "Whether the defendant has met the standard of care – that is, whether there has

25   been a breach of duty – is an issue of fact that turns on the specifics of the individual case."

26   *Gipson*, 150 P.3d at 230.

27           Defendant argues that Plaintiffs fail to identify specific federal employees who

28   breached the alleged duty.  Doc. 31 at 32.  But the complaint lists DHS employees who

separated Plaintiffs, DHS employees who were responsible for supervising and managing detained individuals at CBP and ICE facilities, and HHS employees responsible for supervising and managing the detention of UACs.  Doc. 16 ¶¶ 21-23.  This is sufficient to state a claim.  Plaintiff is not required to identify the federal officers by name at this stage. *J.P.*, 679 F. Supp. 3d at 922 ("Although Plaintiffs do not refer to the CBP officers by name, the United States' pre-discovery complaints about Plaintiffs' inability to name the specific actors is premature.").

Defendant also argues that Plaintiffs fail to identify specific conduct that breached the alleged duty.  Doc. 31 at 32.  Rule 8 requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  This statement "need not contain detailed factual allegations," only "enough facts to state a claim to relief that is plausible on its face."  *Stoner v. Arizona Dep't of Econ. Sec.*, No. CV-24-1034-PHX-DGC, 2024 WL 2746978, at *1 (D. Ariz. May 29, 2024) (citation omitted).  Plaintiffs' complaint meets this requirement.  The complaint lays out several ways Defendant violated the duty of care owed to them while in custody.  *See* Doc. 16 ¶¶ 148-53.  This is enough to state a claim for negligence and give Defendant fair notice.  *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (The complaint need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.") (citation omitted).

**IT IS ORDERED** that Defendants' motion to dismiss (Doc. 31) is **granted in part**. Plaintiffs' claims are dismissed to the extent they allege harms resulting from policymaking or agency-wide misconduct.  The motion is otherwise **denied**.

Dated this 26th day of November, 2025.

David G. Campbell
Senior United States District Judge